## David D. Johnson's License.

165      315
23 SC ¹599

165   315
j226  ¹ 72

*Liquor laws—Distiller's license—Mandamus—Act of 1891.*

An order refusing to grant a distiller's license is justified where the record shows that the grounds of refusal were that the distillery was not located in a city or town, but in a township; that its former occupants had violated the liquor laws after repeated promises had been made to the court whenever a license had been granted for the place; that in the judgment of the court it was not necessary, did not do a legitimate business, and had not been properly conducted. Upon such a record the Supreme Court will not, by mandamus, compel the judge of the quarter sessions to grant a license to the applicant, or to show cause why he did not do so.

*Mandamus—Nature of the writ.*

Mandamus is a command to some official or other officer to proceed to the discharge of some official duty. When that duty is deliberative or depends upon the exercise of official discretion, the purpose of the writ is to quicken the action of the officer and require him to proceed to hear, to deliberate, to exercise his discretion. It does not lie to revise the decision of any person clothed with judicial deliberation or discretionary powers.

A mandamus is not a substitute for an appeal, and it does not bring up for review the soundness of the discretion used, or the correctness of the conclusion reached.

Filed Oct. 9, 1893.   Petition for mandamus to Hon. NA-
THANIEL EWING, P. J., Q. S. Fayette Co.   Before STER-
RETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN
and THOMPSON, JJ.   Writ refused.

The petition was as follows :

" The petition of David D. Johnson, of Wharton township,
Fayette county, Pennsylvania, respectfully represents :

" That he is the owner of the ' Hart Distillery,' known in
the Internal Revenue Regulations of the United States as Dis-
tillery No. 19, situate in Wharton township, Fayette county,
Pennsylvania, one of the oldest distilleries in said county, and
which has been used and operated for almost or quite a half
century with few intermissions.

" That on February 11, 1893, at No. 121 March Sessions,
1893, in the Court of Quarter Sessions of Fayette county, Penn-
sylvania, your petitioner filed his petition, bond and justifica-
tion of sureties for a distiller's license in the first ward of the
borough of Uniontown, said county, for the year beginning
May 1, 1893, and ending April 30, 1894, in compliance with
the acts of assembly, and the rules of court of said county, in
such cases made and provided.   That said petition was signed
by a large number of the leading citizens of Fayette county,
asserting that the applicant was a citizen of the United States,
of temperate habits, and of good moral character, and praying
the court to grant petitioner a distiller's license, authorizing
him to manufacture, distill and sell spiritous liquors and admix-
tures thereof in quantities not less than one gallon, in such
manner as is provided by the laws of this commonwealth.
That said petition set forth specially all matters required by
the various paragraphs of section 4, of the act of assembly of
June 9, 1891, P. L. 257, under which said application was
made.   That an additional petition was filed March 8, 1893,
signed by a large number of the qualified electors of Wharton
township, certifying to the good moral character of the appli-
cant and to his fitness to be intrusted with such a license.
That no remonstrance or objection of any kind was filed or
made against the granting of the license, and that the fitness
of the applicant to receive and hold such license was in no way
questioned.

" That on April 10, 1893, the said court, Hon. NATHANIEL EWING, refused to grant said license, without finding or alleging that the papers of the applicant were not in accordance with the requirements of the act of assembly under which the application was made, or that the said applicant was not a fit person to have such license, but intimating that his reason for refusing said license was because the place for which said license was asked is not in the immediate vicinity of the distillery. That the applicant took an exception to this refusal and assigned the same for error and for redress appealed the matter to this Honorable Court. That a copy of the order of the court below refusing said license, and of the exception thereto, and of the assignment of error, is hereto attached and made a part hereof.

" That on May 10, 1893, the matter was argued before this Honorable Court in the city of Philadelphia, and on July 19, 1893, in an opinion by his Honor, Mr. Justice GREEN, reported in 156 Pa. 322, a copy of which opinion is hereto attached and made a part of this petition, this court expressed it as their opinion that the appellant's petition for a license should have been sustained and the license granted, and your Honors thereupon made an order reversing the order of the court below refusing the license, and awarded a procedendo.

" That on September 6, 1893, a motion to have said license granted in accordance with the opinion of this court, was filed in the court below by counsel for the applicant, and that the arguments of counsel on said motion were heard by said court on September 11, 1893, at which time the opinion of this court was fully presented to the court below.

" That on October 3, 1893, the court below, in an opinion and order filed, after having the opinion of this court called particularly to his attention, denied the motion to grant the license applied for and again refused to grant said license. That a copy of said opinion and order is attached to this petition and made a part thereof."

The petition prayed for a writ of mandamus.

The opinion of the court below, referred to in the petition, was as follows :

" The decree of this court of April 10, 1893, refusing this application for a distiller's license, was reversed by the Su-

preme Court by opinion filed July 19th last and a procedendo awarded; and we are now, by motion filed Sept. 6th, asked to grant the license. A procedendo is a direction by the court of review to the lower court to proceed to render judgment in the case in accordance with the law as laid down in the opinion accompanying the writ, and is not a command to render judgment in any specified form. Were it the latter, all we could do would be to enter the designated judgment or decree; but, as it is, we are required to examine said opinion and thereupon pronounce a decree based upon grounds therein recognized as legal and valid. We think such was our decree of April 10th last, but we then committed the error of not filing an opinion giving the reasons which influenced it, of which reasons the Supreme Court were not advised upon the ex parte hearing had upon the appeal, and the conclusion was reached that the license was arbitrarily refused. Such is very far from being the case, and we propose here now to give, as briefly as possible but clearly, the reasons which induced our action.

" In disposing of license applications just prior to the passage of the acts of May 13 and 24, 1887, this court had decided and determined that no wholesale or eating-house licenses were necessary in this county for the accommodation of the public, and all such applications were refused. This conclusion was not reached hastily or arbitrarily, but after hearings had upon the petitions and remonstrances, and upon consideration of all the facts and circumstances, and due regard had for the prevailing sentiment of the community and for the public good. This judgment was popularly approved, and any changes in circumstances and conditions and public sentiment since have been, it is believed, largely in its favor. When the act of May 24, 1887, placed the licensing of distillers and brewers in the hands of the court, a grave responsibility was imposed by reason of the amount of money invested in such manufactories, and the consequent large property interests involved. We were then, and still are, of the opinion that so far as any necessity for the accommodation of the public is concerned there is no practical difference between wholesale and manufacturers' licenses, the privileges being so nearly the same, and, consequently, that both should be refused as unnecessary. But we were unwilling to be made the instrument of injuring pri-

vate property to the extent which that ruling would require, since it would have almost destroyed the distilleries and breweries then in existence in the county. So, when the owner of this distillery made application in 1888 for a license for a place in Uniontown, we granted the license, notwithstanding it was remonstrated against as unnecessary for the accommodation of the public, and such was our judgment and opinion. And we did likewise in similar cases. But we soon found that practice to be productive of public evil and very objectionable, and we sought diligently for some solution of the problem. After study of the question and of all interests involved, we found that the existing manufactories were so located and distributed over the county as to probably occasion the least public injury, and yet be able to carry on business, if their licenses were asked and granted for places only in the immediate locality of the respective manufacturing establishments. This would largely conserve such manufacturing interests, and yet would prevent the multiplying of licensed places in those localities where decidedly the greatest injury to the welfare of the general public would follow. We, therefore, determined to enforce our judgment as to the lack of any necessity for such licensed places for the accommodation of the public, except in those cases where the licenses were asked for places in the immediate neighborhood of the distilleries or breweries, and in those cases alone to make a concession and grant the licenses. And in the spring of 1889, while still following the course pursued the previous year, we announced this conclusion as our practice for the future, so that all would be advised of it, and could act accordingly. We thought this was fully understood by every one interested, either as attorney or applicant, and have ever since maintained that position, with the single exception presently stated. It will thus be seen that our discretion has been exercised in favor of the manufacturers, instead of against them; but such action has never been intended as any encouragement to new enterprises of that character. And since the passage of the act of June 20, 1893, permitting distillers to sell liquors of their own manufacture in original packages of not less than forty gallons without obtaining a license therefor, it is very probable that we will hereafter refuse to grant them license, the reason for our doing so in the past hav-

ing thus ceased to exist. It will be noted that this late act makes the only practical distinction between wholesalers and distillers that has existed in the laws, outside of Philadelphia and Allegheny counties, at least since the passage of the act of May 24, 1887, and is evidence of the correctness of our position in classing them together. It also shows approval of our course in using our discretion in the interests of the distillers, for it must have been about the same view of their rights which we entertain that occasioned the enactment of this law.

" The exception referred to above was made in 1890, when the owner of this same distillery—which is a small one located in Wharton township—made application for a license for a place in Uniontown again, and, when about to be refused for the reason already stated, became so importunate and promised so faithfully to restrict his sales entirely to original packages if license were granted him, that we finally concluded to accommodate him for that year and granted him a license upon the faith of his promise. . After obtaining the license he habitually violated his promise, and when we learned that fact we took advantage at the first opportunity to announce that, by reason of said violation, no license would in future be granted that distillery ; and subsequent applications were refused. The present applicant is well informed on all such matters, and must have known all this before he and Thompson purchased the distillery and entire premises of five acres, as shown by the deed, in March of last year, for $500.

" When, therefore, this application was made last spring we refused the license because, in our opinion, it is not necessary for the accommodation of the public, and for no other reason. The former owner had forfeited any claims the distillery had to our favorable consideration by breaking faith with the court, and the present owner added to the unfavorable attitude by seeking the license for a place far distant from the distillery. There remained nothing then to move us to disregard our judgment and opinion on the question of the necessity of the license.

" We might say much and assign many good reasons in support of our opinion that this license is unnecessary, but that is not required. It is sufficient to declare that opinion and to call attention to the fact that it is based not only upon our

own knowledge of the facts, but also upon that obtained from the consideration of the case as originally presented upon the petition and remonstrances in the spring of 1888, and from the contests had over the wholesale licenses generally, then and in prior years. Where, as here, the question is one of public necessity, and the circumstances and conditions remain practically unchanged, it would be useless to require remonstrances each year, and we have so announced. To go through the form of deciding the case anew at each application upon the same facts would be a mockery. And the mere change of owners could not change the view of the court on the question of the necessity.

"The opinion we held last spring we still entertain, and, if it be found sound and legal in the light of the principles laid down in the opinions of the Supreme Court, it must determine our action now. After a careful examination and study of the opinion of the Supreme Court, we believe it to fully sanction and approve our position, and to warrant us in again refusing this application. And to do otherwise would give approval to the idea that our former action was without reason. The motion will, therefore, be denied and the license refused.

"In conclusion we may be pardoned for stating the reasons why we did not think it necessary before to file an opinion, or to have the record disclose why the license was refused. Prior to May, 1887, both wholesale and retail licenses in this county were regulated by the acts of 1856, 1858, 1859 and 1867, and those acts remained in force as to wholesale and manufacturers' licenses under the act of May 24, 1887, by virtue of the provision therein that such licenses should be granted as is provided by existing laws. The retail act of May 13, 1887, embraces substantially the same provisions as to the power, duty and discretion of the court as the earlier acts mentioned. And the act of June 9, 1891, supplying that of May 24, 1887, is identical in the title and in the section prescribing the powers and duty and discretion of the court in acting upon license applications, with the title and the similar section of said retail act, saving only that in the title it applies to wholesale (recognizing brewers and distillers as such) instead of retail dealers, and that it omits, in § 6 the words 'and the entertainment

of strangers or travelers,' and allows the petitioners for and
against from the county at large instead of limiting them to
'residents of the borough or township.' Nor is it merely a
revenue act, for it is entitled: 'An act to restrain and regu-
late the sale of vinous, spiritous, malt or brewed liquors, or
any admixtures thereof, by wholesale.' It seemed, therefore,
that every power, duty and discretion which the court pos-
sessed in regard to the disposition of applications for retail
license was also possessed with reference to all wholesale appli-
cations, unless the provision of § 6, of said act of June 9, 1891,
about the necessity for the license, were held inapplicable in
cases of brewers and distillers by reason of the proviso in
the 5th clause of the 4th section. But we are advised that
this very question was raised by the appellant in this case,
and yet the Supreme Court say that 'it is true that the act of
1891 does give the court power to consider the question of
the necessity of the license for the accommodation of the pub-
lic,' etc.

"Now under said earlier acts it was held, in Conway's Peti-
tion, 1 Atl. R. 727—an application for a wholesale license
which was refused, and there was no remonstrance and the
court declined to assign any reason—that 'Much must be left
to the discretion of the court to which an application is made
for license to sell liquor. Nothing is shown in this case to
prove that discretion was not reasonably and properly exercised.'
In Knarr's Petition, 127 Pa. 554, an application for a brewers'
license under the act of May 24, 1887, where no remonstrance
was filed and the license was refused and no reason assigned,
an alternative writ of mandamus was refused because the grant-
ing or refusal of licenses continues, therefore, to be within the
discretion of the courts of quarter sessions of the proper county,
except Philadelphia and Allegheny, precisely as before. To
the same effect is Nordstrom's Petition, Ib. 542. And we did
not think the case of Prospect Brewing Co.'s Petition, Ib. 523,
applicable, because, in Nordstrom's Petition, supra—when re-
ferring to Reed's Ap., 114 Pa. 452, and other cases which
decide that the act of 1867 'places wholesale and retail licenses
upon the same plane, and confers upon the courts of quarter
sessions the same discretion in granting or refusing a wholesale
license as in the case of a retail license '—it was said : 'This

and some other cases were not referred to in Pollard's Case and that of the Prospect Brewing Co. for the reason that they had no application; we were then considering the local acts in force in Allegheny county and the city of Philadelphia; not the act of 1867, which is a general law.' Raudenbusch's Petition, 120 Pa. 328, and Sparrow's Petition, 138 Pa. 116, although decisions under the retail act of May 13, 1887, were considered authority because of the same provisions, as we have seen, being incorporated in the act of 1891, and they decide not only that discretion rests in the courts, but, quoting now from the syllabi, that the courts 'Must exercise their own judgment and discretion, in the light afforded by the petitions, remonstrances and other evidence,' and that they 'May in some instances act of their own knowledge, and this court will not review the manner in which such discretion is exercised.' This power in the court is also recognized in the opinion of the Supreme Court in the case at bar, where, referring to the absence of any remonstrance, it is said: 'The court has not stated that they had any opinion upon these questions, or either of them,' but we here first learn that it is necessary to state such opinion. Relying upon the other cases cited, we believed that, as in Conway's Petition, supra, where the record disclosed no reason, the presumption would be in favor of the proper exercise of discretion by the court, and that upon appeal it would be the duty of the appellant to show the contrary. We are sorry if this is not the law. The whole license business is most troublesome and disagreeable, and it only makes it more so if, in every case where a license is refused, the reasons must be stated; for cases must and do occur where the applicants are deemed unfit to be trusted with license, and it is not pleasant in any case to be obliged to formally declare and record that fact."

*A. F. Cooper* and *J. Q. Van Swearingen,* for petitioner.—The court has no power to inquire into the necessity of a distiller's license: Act of June 9, 1891, § 4, P. L. 257.

The present owner of this distillery is in no way connected with any previous owners, and is not responsible for any agreements that previous owners have made with the court.

The cases cited in the opinion of the court below were all decided before the act of June 9, 1891.

This court has already said that this license should have been granted : Johnson's License, 156 Pa. 322.

OPINION BY MR. JUSTICE WILLIAMS, Nov. 13, 1894 :

The petitioner was an applicant for a license to sell liquors in the county of Fayette, and his application came up at the . March Sessions, 1893. No remonstrance was presented to the court against the license, and no evidence was offered in opposition to it, but when it was reached it was refused. The petitioner then applied to this Court for relief alleging in substance that his application had been arbitrarily refused without a hearing. The order refusing the license was set aside for this reason and a procedendo awarded. Thereupon the court below took up the case again on the third day of October, 1893, and again refused the application, placing the reasons therefor on the record. An examination of these reasons shows that the distillery of the applicant is not located in a city or town but in the township of Wharton in Fayette county ; that its former occupants have violated the liquor laws, and this after repeated promises made to the court whenever a license has been granted for the place ; that in the judgment of the court it is not necessary, does not do a legitimate business, and has not been properly conducted. These reasons are amply sufficient to justify the order made. The petitioner, after this action by the court of quarter sessions, comes again into this Court with the petition now before us and asks us to issue a writ of mandamus " commanding him, the said NATHANIEL EWING, judge of the Court of Quarter Sessions of Fayette county, Pennsylvania, to grant said license or show cause why he should not do so."

This brings us to consider briefly the nature and object of a writ of mandamus. It is a command to some official or other officer to proceed to the discharge of some official duty. When that duty is deliberative or depends upon the exercise of official discretion the purpose of the writ is to quicken the action of the officer and require him to proceed to hear, to deliberate, to exercise his discretion. It does not lie to revise the decision of any person clothed with judicial, deliberative, or discretionary powers : Dechert v. Com., 113 Pa. 229 ; Raudenbusch's Petition, 120 Pa. 328. If a judge declines to hear, or delays a

hearing unreasonably, a mandamus is the appropriate remedy. It commands him to proceed to a hearing and decision, but it is not a substitute for an appeal and it does not bring up for review the soundness of the discretion used or the correctness of the conclusion reached : Newlin v. The County, 23 W. N. 153 ; Petition of Michael Collarn, 134 Pa. 551 ; Wolff's Petition, 138 Pa. 316 ; Goldman's Petition, 138 Pa. 321. This rule is applicable to petitions for licenses to sell at wholesale as well as to those for licenses to sell at retail : McNulty's Petition, 142 Pa. 475 ; Ostertag's Petition, 144 Pa. 426. The general rule that courts will not undertake a supervisory control over the exercise of discretionary powers upon mandamus was restated and applied during the last year in Com. ex rel. Sherry v. Jenks, 154 Pa. 368, and is too well settled to require discussion. In a clear case of an abuse of discretion a certiorari to bring up the record for review might enable us to reach the difficulty ; and possibly it might be reached in some cases on a petition for a writ of mandamus, but the general rule is as stated in the cases cited above.

It is just to the writer of this opinion to state that this case was decided before the close of the October Term of last year, and an opinion written which seems never to have reached the files. Our attention having been called to the state of the record during the present term, we now put the decision formally upon the files, and with it this brief statement of the rule by which our action is controlled.

The petition is dismissed.