## Loraine, Appellant v. Pittsburg, Johnstown, Ebensburg & Eastern Railroad Company.

*Mandamus—Right of individual to institute proceedings—Common carriers—Furnishing cars.*

Where a person opens and equips a coal mine on the line of an existing railroad, and the railroad company after furnishing him cars for a certain period of time, refuses to continue to furnish him cars unless he sells his coal at a rate much below the market price to a company controlled by the president of the railroad company, the person injured may in his own name, and without the intervention of the attorney general, institute mandamus proceedings to compel the railroad company to furnish him cars ; in such a case it is immaterial that other shippers were refused cars for the same reason.

*Mandamus—Jurisdiction of court—Corporation—Chief place of business.*

Where a railroad company has its principal office in Philadelphia, but has constructed and operates its railroad wholly within Clearfield county, where its operating officers dwell, mandamus proceedings may be instituted against the company either in Philadelphia or in Clearfield county.

Argued Feb. 4, 1903. Appeal, No. 356, Jan. T, 1902, by plaintiff, from judgment of C. P. Clearfield Co., Dec. T., 1902, No. 343, refusing mandamus in case of C. D. Loraine v. Pittsburg, Johnstown, Ebensburg & Eastern Railroad Company. Before MITCHELL, DEAN, MESTREZAT and POTTER, JJ. Reversed.

Petition for mandamus.
The facts are stated in the opinion of the Supreme Court.

*Error assigned* was in quashing writ of mandamus.

*David L. Krebs*, of *Krebs & Liveright*, with him *Murray & Smith*, for appellant.—It is absurd to contend that the relator's rights and relations to the defendant corporation are the same as those of any other person in the community. They are no higher in degree than those of the other operators and shippers of coal over the defendant corporation railroad, dependent upon it alone for transportation of their products ; but his interests are immeasurably higher than those of the public or the indi-

vidual who may occasionally ship a half car of freight. The very life and existence of his business is founded on the performance by the defendant of its duty as a common carrier which it claims to exercise, and which can only exist by virtue of the grant from the state: Com. ex rel. Hamilton v. Pittsburg, 34 Pa. 509; Union Pacific R. R. Co. v. Hall, 91 U. S· 343; Miller v. Canal Comrs., 21 Pa. 23; Penna. R. R. Co. v. Canal Comrs., 21 Pa. 9; James v. Comrs. of Bucks Co., 13 Pa. 72; Com. v. Rosseter, 2 Binn. 360; Treas. Jefferson Co. v. Shannon, 51 Pa. 221; Com. ex rel. v. McCandles, 129 Pa. 492; People v. Collins, 19 Wend. 56; County of Pike v. The State, 11 Illinois, 202; Ottawa v. The People, 48 Illinois, 233; Hamilton v. State, 3 Indiana, 452; People v. Halsey, 37 N. Y. 344; State v. County Judge, etc., 7 Iowa, 186; State v. Common Council of Rahway, 33 New Jersey Law, 110; Dillon's Munc. Corp. sec. 865; Com. v. Williamsport, 84 Pa. 487; Cheetham v. McCormick, 178 Pa. 186; Coulston v. Dickinson, 3 Brewster, 561.

The courts of Clearfield county had jurisdiction to issue the writ: Jensen v. Phila., etc., Ry. Co., 201 Pa. 603.

*Oscar Mitchell,* with him *Harry Boulton,* for appellee.—The prayer of the relator is for the enforcement of a public duty and this is clearly admitted when the court is asked " to require the defendant company to continue to do as legally bound by its duty to plaintiff as common carrier."

All railroads and canals shall be public highways, and all railroad and canal companies shall be common carriers; Art. XVII, sec. 1, Const. Pa.

The interest of the plaintiff in the defendant's railroad as a shipper is in common to all other shippers on the railroad, and while it may benefit him more than his neighbors, yet it is manifest his interest, in kind if not in degree, is common to all the other shippers on the railroad: Heffner v. Commonwealth, 28 Pa. 108; Commonwealth ex rel. v. Park et al., 9 Phila. 481; Reading v. Commonwealth, 11 Pa. 196.

The relator does not show a right independent of that which he holds in common with the public at large: Commonwealth ex rel. v. Park et al., 9 Phila. 481.

The court of common pleas of Clearfield County had no ju-

risdiction to issue the writ to this defendant: Whitemarsh Twp. v. Phila., etc., R. R. Co., 8 W. & S. 365.

OPINION BY MR. JUSTICE DEAN, February 23, 1903:

The defendant company was chartered sometime before 1897 under the general railroad act of 1868 as the Altoona & Phillipsburg Connecting Railroad Company; in the year 1897 it was leased to the Pittsburg, Johnstown, Ebensburg & Eastern Railroad Company, the principal line of which last named road extended beyond the boundaries of Clearfield county; but the Altoona & Phillipsburg, the lessor road, was wholly within that county. The lessee road was only a project; was never constructed and existed only on paper. The lessor road was actually constructed for about twelve miles to connections with the Beech Creek and Pennsylvania railroads and was in operation between those points carring freight and passengers. It owned about 300 coal cars for the transportation of coal upon its twelve miles of line, to the through roads with which it connected. Along these twelve miles were several coal mining plants in active production, which could reach the market in no other way than over this short railroad; among them was plaintiff's, fully equipped and in active operation, mining and shipping coal to market. While in the active pursuit of his business, plaintiff avers, that on November 19, 1902, by written communication from defendant company, through its superintendent, he was notified, in substance, that on and after the 20th of that month no more cars for shipment of his coal would be furnished him, unless he sold it to the American Union Coal Company; this latter company at the time offered to pay him $1.50 per ton for coal delivered on cars at his mine, while in the market it was worth $3.00. This offer he declined. Since that time defendant has refused to furnish him cars. He, therefore, prayed the court of common pleas of Clearfield county for a mandamus on defendant requiring it to place cars upon his siding for coal shipment as before November 19, 1902, as it is legally bound as a common carrier to do. On this petition the court awarded a writ of alternative mandamus directed to defendant which was served by the sheriff on defendant by delivering personally, within his bailiwick, to the superintendent company of defendant company, a copy of the

writ. No answer was made to the averment of facts in the petition by defendant. It moved, however, to quash the writ mainly on two grounds, (1) because the writ was prayed for in the name of a private individual, to enforce a public duty, and (2) because the defendant is not a corporation within the county of Clearfield, under the act of June 8, 1893, and therefore the court of Clearfield county had no jurisdiction to entertain the petition or to issue the writ. Thereupon, the court dismissed the petition.

The facts as stated in the petition in their full scope must be taken as averred by plaintiff, for they are not denied by defendant. Therefore, the first and main question is, can the plaintiff ask on his own complaint for the issue of the writ, without the intervention of the attorney general? We concede that there is apparent conflict in the decisions, not however in the principle on which they are based, but in the application of the principle to the varying facts of different cases. The test of right of a private relator to the writ is not, as stated by appellee, whether the duty sought to be performed be a public one, but whether the complainant by breach of the public duty has suffered an injury special and peculiar to himself. The defendant under the statute from which it derives its being is a common carrier and as such has imposed upon it certain public duties, such as to construct its road, to equip it with cars, locomotives and employ hands to run them for all the public. This is a public duty. If it fail in performing it, it fails to carry out the very purpose of its charter and the public without distinction, suffers by the breach of duty. In such case both at common law and under our statute of 1893, proceedings should be instituted by the commonwealth at the instance of the attorney general.

But it is held in England that " in general all those who are legally capable of bringing an action are also legally capable of applying to the Court of King's Bench for the writ of mandamus. This is true in all cases it is believed where the defendant owes a duty in the performance of which the prosecutor has a peculiar interest:" Tapping on Mandamus, page 28. The right is distinctly recognized in this state in Com. ex rel. Hamilton v. Pittsburg, 34 Pa. 496, and in many cases following it. Nor, as argued by appellee's counsel, is it taken away by

our mandamus act of June 8, 1893.    True, the act directs that when the writ is sought to procure the performance of a public duty only the proceeding shall be in the name of the commonwealth at the relation of the attorney general or the district attorney of the proper county, but it also provides in the 3d section, that it shall issue on the application of any person beneficially interested.    While we have no doubt, that these words would give standing to any one interested to make application to the attorney general for his intervention, they just as clearly save to each person the right existing before the act, to sue out the writ when he seeks to protect an interest, special to himself as distinct from the general public.    Had this plaintiff such special interest?    The defendant constructed its railway and equipped it; plaintiff then opened his coal mine, constructed his sidings, chutes and tipples with a view to shipment on this road and no other; defendant up to November 19, 1902, furnished him with cars; then it peremptorily refused to perform its duty to him unless he sold his coal to another coal company at a price much below what it was worth, this latter company being controlled by the president of the railroad company.    If this was not a wrong special to plaintiff as distinguished from the public, we are at a loss to conceive what would constitute such a wrong.    It is not a refusal to supply cars and motive power on the road or to keep the road in repair; it is a refusal to carry his coal because he will not sell it at a low price to the president's coal company.    As the court below in substance says, it was iniquitous.    It in effect, if kept up, would completely destroy his plant with the consequent loss of his invested capital; and even if now, his wrong is to some extent remedied, he has lost months of active business.    The public duty of defendant was to carry freight and passengers; suppose it had refused to sell him a ticket as a passenger and notified him that such refusal would be kept up unless he sold his coal to the president's coal company, the wrong would have been a violation of a duty which defendant owed to the general public as a common carrier of passengers, but it would also have been a wrong special to himself distinct from the public of which he was one, and from which he alone specially suffered.    It would have been a demand on him to do something having no connection with defendant's business of transportation, and if he re-

fused, to deprive him of a right which under the most solemn forms it had undertaken to accord to him.

And it is wholly immaterial that the defendant treated some shippers of coal along its road in like manner; the injury in each case was special. The general public, all the inhabitants of a city or township suffer by the neglect of a municipal corporation to keep in repair its highways and bridges; the loss to some individuals of the general public by the breach of duty is much greater than to others; but this does not give a right of action to the individual who merely suffers the greater loss; but if a horse break a leg by falling into a hole or if a vehicle be wrecked from the same cause, the owner suffers an injury different in kind and a loss special to himself for which he can sue as an individual; and if a dozen or more persons suffered like special injury each has his remedy by personal action. We are of opinion that on the particular facts of this case, not disputed by defendant, plaintiff's injury was different in kind and special to himself and that therefore, he could properly seek the remedy by mandamus.

The argument, that injustice may be done by the enforcement of this form of remedy, is without force. If a railroad corporation by reason of storms, floods or other disaster is unable to perform its duty to the public in supplying cars to shippers, or because of sudden demands beyond what could have been anticipated by reasonable foresight and prudence, or by congestion of traffic beyond reasonable expectations, and shippers' demands cannot be immediately responded to, the court in the exercise of a proper discretion will refuse the writ and leave the complaining party to his remedy at law or in equity. But here there was no room for the exercise of discretion because the facts were undisputed and clearly demonstrated the right of plaintiff to demand the writ.

The court below argues that while relief in some form should be given plaintiff, it cannot be by mandamus, because the decree would necessarily be too indefinite to remedy the wrong. We do not think so. The duty and the measure of it owing by defendant to plaintiff was performed up to November 19, 1902; with its performance, prior to that, no complaint is made. We can see no obstacle in the way to framing a writ compelling defendant's continuance in the performance

of that duty and the court below has ample power to enforce its commands against defendant and its officers and should see to it that its orders are obeyed.

The court below is further of the opinion that under the act of 1893, it is without jurisdiction. The words of the act give to the courts of common pleas of any county jurisdiction to issue writs of mandamus to corporations being or having their chief place of business within the county. Although defendants charter limits extend beyond the boundaries of Clearfield county, it is constructed and operated wholly within Clearfield county, its operating officers, the superintendent and others are within that county. The words are, shall have jurisdiction as to " all corporations being or having their chief place of business within such county." In Bailey v. Williamsport, etc., Railroad Company, 174 Pa. 114, Jensen v. Phila:, etc., Railway Co., 201 Pa. 603, and in other cases, we endeavored to interpret these words, and held that a corporation might be subject to service in at least two places, one within the territorial limits of the county where its roadbed and rails were laid and where it did its carrying business, the other where its general office was located, its books kept and its corporate seal preserved. While it is true the words are almost a copy of those in the act of June 14, 1836, on which this court passed in Whitemarsh Township v. Phila., etc., Railroad Co., 8 W. & S. 365, decided in 1845, opinion by Justice ROGERS, and where a somewhat narrower interpretation was given them, yet that decision must be taken in view of the conditions then existing. It will be noticed, that in that case the road was located in but two counties, one of them Philadelphia, where the general office and chief place of business was established and where nearly all the business was transacted. The court says that the last words of the section, " chief place of business in the county," mean that where the road runs through more than one county and has its chief place of business in but one of them, service must be had in that one. But the act of 1893 must be interpreted in view of conditions existing when it was passed, with carrying corporations, mining and manufacturing corporations located in the interior of the state and to a large extent doing business there, still having a principal office located hundreds of miles distant in Philadelphia. In this act the words mean that service can

be had either where the office is located or in the county where the corporation is located and has its being.   In this case the plaintiff might have applied for his writ in Philadelphia, where defendant has its office or he could do as he has done, commence proceedings in the courts of Clearfield where the corporation is located.   The decree of the court below is therefore reversed and it is directed that a mandamus issue from that court as prayed for by plaintiff.