## Miles *v.* Metzger et al., Appellants.

## Kelker *v.* Metzger et al., Appellants.

Argued May 21, 1934. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*John Y. Scott,* Deputy Attorney General, with him *Wm. A. Schnader,* Attorney General, for appellants.

*Horace A. Segelbaum,* for appellee.

OPINION BY MR. JUSTICE DREW, June 30, 1934:

These two actions of mandamus were brought against the secretary of revenue, the auditor general, and the state treasurer by James G. Miles and Henry A. Kelker, Jr., to compel the payment to them, respectively, of an informer's fee in escheat and an escheator's fee. The cases were tried on petition and return and resulted in judgments for plaintiffs. In each case the defendants' appealed, and by agreement the appeals were argued together.

The facts, as to which there is no dispute, may be summarized as follows: On March 20, 1930, Miles informed the secretary of revenue, in the manner prescribed by section 1304 of the Fiscal Code of April 9, 1929, P. L. 343, that Elmira A. Attick had died intestate, without heirs or known kindred, and that her estate would, therefore, escheat to the Commonwealth. On April 4, 1930, the secretary of revenue appointed Kelker as escheator, and informed Miles by letter that such had been done because "it is our understanding that no administrator has been appointed in this estate." Between these two dates a will of the decedent was admitted to probate, and letters testamentary were issued to the executors named therein; the will provided for the payment of certain legacies, but failed to dispose of the larger part of decedent's estate, as to which she died intestate.

On April 7, 1930, Kelker wrote the secretary of revenue that he had "conferred with Mr. Miles, the informant, and with one of the co-executors." The secretary of revenue was thus informed that Mrs. Attick had left a will and that executors had been appointed. However, he took no action upon receipt of this information, but permitted Miles and Kelker to proceed to have the estate escheated to the Commonwealth under the provisions of the Act of May 2, 1889, P. L. 66. On April 1, 1931, the

secretary of revenue again wrote to Kelker, asking to be advised as to the status of the estate, and was informed that an account had been filed by the executor and confirmed, but that the court was to pass on certain exceptions and on the claims of possible heirs at law. Miles and Kelker continued to perform their duties without objection, appearing before the auditor appointed by the court and claiming the residue of the estate for the Commonwealth, until October 6, 1932. On that date, when their services were almost completed and the auditor was about to file his report, the secretary of revenue requested Kelker to return for cancellation his commission as escheator, stating as the reason for this demand that "Where there is an administrator or other fiduciary in an estate, it is not the policy of this Department to appoint an escheator nor to recognize an informant, inasmuch as section 1314 of the Act of April 9, 1929, P. L. 343, provides the method for the payment into the State Treasury of unclaimed moneys in the hands of fiduciaries."

Shortly thereafter, on November 21, 1932, the auditor filed his report, in which he stated: "The decedent's will contains no residuary clause, and there are no known heirs or next of kin of the decedent. ...... The residue of her estate will therefore escheat to the Commonwealth. ...... There will be a very substantial amount of money ($8,626.22) remaining for which the only claim before your Auditor is that of the Commonwealth of Pennsylvania, acting by its local Escheator, Henry A. Kelker, Jr., on information furnished by James G. Miles, and the Commonwealth Trust Company, surviving executor, should immediately notify the proper officers of the Commonwealth of Pennsylvania of the existence of this balance that the Commonwealth may take such action as it deems necessary to secure the same under its escheat laws." Subsequently the attorney general procured an order of court directing the payment by the executor of this balance into the state treasury, and pay-

ment was accordingly made. Defendants have declined to pay the fees claimed by plaintiffs (which fees are fixed by sections 1304 and 614 of the Fiscal Code) on the ground that the residue of the estate was not awarded to the escheator, but was paid to the Commonwealth without escheat under section 1314 of the Fiscal Code.

The learned court below held that under these circumstances plaintiffs are entitled to compensation in the full statutory amount. We cannot see how it could have reached any other conclusion. So far as informers are concerned, the statute provides a definite reward for those who shall first inform the Commonwealth that an escheat has occurred, procure necessary evidence to substantiate the fact of escheat, and prosecute its right to a successful result. This is not a gratuity, but an offer, stating the terms upon which the Commonwealth will enter into a contract to pay a fixed sum to anyone who will undertake to perform certain specific services for the state. Miles, by informing the Commonwealth in the manner prescribed by statute, accepted the offer contained in the statute, and a binding contract arose, which the Commonwealth was bound to give him a reasonable opportunity to perform. As was said by the learned Judge McPherson in Com. v. Gregg, 1 Dauphin Co. Rep. 203, "[The informer's fee] is a sum offered......as pay for a definite service, and the state is liable on the footing of a contract when the offer is accepted and the service is performed. ...... When the information is given the offer is accepted, and a contract is then made of which the terms are chiefly executory. One term of the contract is executed when the information is given, and the other terms are still to be carried out. Ordinarily a legal proceeding is necessary, at least in the case of personal property, and the informer is bound to furnish the necessary evidence and to prosecute the Commonwealth's title to a successful result. If he performs these terms, the state is bound to perform its contingent engagement

and to pay the sum that has thus been earned. If the informer fails to make out the Commonwealth's claim, the mere fact that he has lodged a fruitless information gives him no claim upon the treasury; but after he has given the information and has thus accepted the statutory offer, he has entered upon a contract which he must be allowed an opportunity to fulfill, and the state has no lawful power to deny him that opportunity. Such denial may of course be actually made, but it does the informer's right no real harm; for if he is willing and ready to perform, and is only prevented from performance by the unlawful exercise of the Commonwealth's power, upon familiar principles in the law of contracts he will be treated as if he had performed, and will be allowed to recover the statutory fee."

The situation with regard to Kelker, the escheator, is the same. He was appointed, under the statute, to perform certain definite and prescribed duties with relation to this one estate; he was employed for a special and single object, at a compensation fixed by statute. When he accepted the appointment by the secretary of revenue, a contract was created, whereby he agreed to render certain services to the Commonwealth, in return for a stipulated compensation.

After entering into these contracts with the plaintiffs, the Commonwealth permitted them to perform their duties without objection for almost two and a half years. The secretary of revenue by his letter of April 1, 1931, showed that he was in accord with the situation as it then existed, and that the Commonwealth recognized the contracts as in full force and effect. It was not until after the plaintiffs had performed practically all the services required of them, and the auditor was about to award the funds to Kelker as escheator, that the Commonwealth revoked the latter's commission and proceeded to secure the money, without the payment of any fees, under section 1314 of the Fiscal Code. Only this action by the Commonwealth prevented plaintiffs, who

stood ready and willing to complete their performance, from finishing the services required by the statute. Under these circumstances, it would be manifestly unfair to permit the Commonwealth to avoid payment of the fees prescribed by the statute as compensation for the services which plaintiffs had rendered. It is well settled, as a principle of fundamental justice, that where one party to a contract is himself the cause of a failure of performance by the other party, he cannot take advantage of his own breach of the contract in so doing, to prevent a recovery by the other party: Bank of Pa. v. Gries, 35 Pa. 423; Kress House Moving Co. v. George Hogg Co., 263 Pa. 191; Horewitz v. Franklin Foundry Co., 279 Pa. 177; see Restatement, Contracts, section 295; Williston, Contracts, section 677.

However, it is contended by the Commonwealth that compensation is provided for informers and escheators only where there has been an escheat, and that there can be no recovery here because the funds were paid into the state treasury without escheat under section 1314 of the Fiscal Code. This section provides, it is true, a method whereby the Commonwealth may obtain property in the hands of fiduciaries to which it is entitled by the principle of escheat, without the payment of any fees. This, however, does not mean that the Commonwealth may not elect to obtain possession of property which is subject to escheat under the provisions of the Act of 1889, which entails the payment of informers' and escheators' fees; although section 1314 of the Fiscal Code is mandatory upon fiduciaries, the Commonwealth need not follow that method of obtaining such property, if it chooses to proceed under the old method. This, we think, is what occurred in the instant case. True, as the Commonwealth argues, Kelker's appointment as escheator was made upon the understanding that no executor or administrator had been appointed, so that the Commonwealth believed that section 1314 was not applicable. However, when, only three days after making the ap-

pointment, the Commonwealth was informed that Mrs. Attick had made a will and that executors had been appointed, the Commonwealth might then have revoked the contracts which it made with plaintiffs on the ground that facts unknown at the time of Kelker's appointment had destroyed the reason for the contracts; it could and should have done so had it intended to secure the residue of the estate under section 1314. In that event, plaintiffs would have been entitled to nothing; their contracts with the Commonwealth would have been rescinded because they were entered into under a mutual mistake of fact. But the Commonwealth did not choose to follow this course. Instead, it permitted the plaintiffs to act—even urging action, as is shown by the letter of April 1, 1931—and elected to gain its share of the estate by the old procedure of escheat. Having so elected, and having received and accepted plaintiffs' services until their duties were almost completed, the Commonwealth could not then revoke its contracts with them. It might once have done so, but having received the benefit of their services, it is now obligated to pay them the fixed statutory compensation for such services.

The judgments are affirmed.