# Edelman *v.* Boardman, Secretary of Revenue, Appellant.

Argued May 24, 1938. Before KEPHART, C. J., SCHAF-
FER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*John Y. Scott,* with him *Guy K. Bard,* Attorney General, and *William H. Wood,* Special Deputy Attorney General, for appellant.

*Wm. A. Schnader,* with him *A. Jere Creskoff,* for appellee.

OPINION BY MR. JUSTICE STERN, June 30, 1938:

During the period between April 12th and October 19, 1935, plaintiff filed with the Department of Revenue of the Commonwealth of Pennsylvania thirteen documents which purported to be informations in escheat. One

hundred and fifty-eight railroad, public utility, and industrial corporations were named,[1] and as to each there was designated an amount alleged to represent dividends declared by the corporation but unpaid, or debts or matured interest on debts owing by it, or stock issued or authorized to be issued but undelivered, all of which property, it was asserted, had escheated to the Commonwealth because the rightful owners of the dividends, interest and stock, and the persons to whom the debts were owing, were unknown to the corporations, their officers, directors or agents, or to any other person, and, in the case of the debts, the rightful owners had "asserted no rights of ownership of such debts" against the corporation. One of the informations alleged that escheats had occurred of certain customers' deposits in the custody of the corporations named, and that such customers' deposits had no rightful owners. The total amount of property listed as escheatable amounted to upwards of sixteen million dollars.

Conferences were had between plaintiff, other persons who had informed as to similar property, and representatives of the Departments of Revenue and Justice. On April 12, 1937, the Secretary of Revenue commissioned escheators for the purpose of recovering the property from certain of the corporations listed by plaintiff, but told the escheators they were not to take any action until they received further instructions. Ten days later he recalled the commissions. On June 7, 1937, plaintiff initiated the present proceedings in the Court of Common Pleas of Dauphin County by filing a petition for the issuance of a mandamus to compel the Secretary of Revenue "to afford to your petitioner an opportunity to prosecute with effect the right of the Commonwealth to the property escheated according to the writings filed by

---

[1] None of these were corporations engaged in receiving deposits of money, securities, or other property, for safekeeping: see Fiscal Code of 1929, P. L. 343, sec. 1305.

your petitioner with the Department of Revenue according to law and to that end that he either appoint and commission escheators or request the Attorney General to prosecute said escheats, affording to your petitioner an opportunity to procure the necessary evidence and to coöperate in the prosecution of the escheats." A return was filed by defendant and a traverse by plaintiff, testimony was taken, and the court below entered judgment for plaintiff and decreed that a peremptory mandamus issue as prayed for.

Plaintiff's real objective is the ultimate recovery of his fee as an informer, and the present action is designed, as the prayer in his petition indicates, to facilitate such recovery. Informers' fees in escheat proceedings are time-honored in Pennsylvania; their statutory origin is to be found in the Act of September 29, 1787, 2 Sm. L. 425, section 9. Section 1304 of the Fiscal Code of 1929, P. L. 343, provides: "Except as hereinafter otherwise provided, any person, who shall first inform the Department of Revenue . . . that any escheat has occurred by reason of the fact that any person has died intestate, without heirs or known kindred, a widow, or surviving husband, or by reason of any other fact, and who shall procure necessary evidence to substantiate the fact of said escheat, and shall prosecute the right of the Commonwealth to the property escheated with effect, shall be entitled to one-fourth part of the proceeds of all property, real, personal or mixed, that has been declared escheated to the Commonwealth in pursuance of such information, after deducting therefrom all debts and expenses with the payment of which said property is charged, and all proper costs and charges incident to the establishing of such escheat, and the converting of the escheated property into money: . . ."

In *Miles v. Metzger,* 316 Pa. 211, at p. 215, it was said: "So far as informers are concerned, the statute provides a definite reward for those who shall first inform the Commonwealth that an escheat has occurred, procure

necessary evidence to substantiate the fact of escheat, and prosecute its right to a successful result. This is not a gratuity, but an offer, stating the terms upon which the Commonwealth will enter into a contract to pay a fixed sum to anyone who will undertake to perform certain specific services for the state." If, in accordance with that ruling, plaintiff's informations satisfied the requirements of the statute, a binding contract arose between him and the State which the Commonwealth is bound to give him a reasonable opportunity to perform. Its obligation to pay an informer's fee being conditioned in part upon services to be rendered by him in the escheat proceedings, it cannot escape liability by refusing to institute such proceedings and thereby prevent him from fulfilling the condition. "It is well settled, as a principle of fundamental justice, that where one party to a contract is himself the cause of a failure of performance by the other party, he cannot take advantage of his own breach of the contract in so doing, to prevent a recovery by the other party": *Miles v. Metzger*, supra, p. 217, and authorities there cited.

Two vital questions, however, arise: (1) Were plaintiff's informations adequate? If not, he has no claim whatever against the State. (2) If, on the other hand, the informations were sufficient to give him a contractual right, and the Commonwealth, by preventing his performance, ignored that right, what remedies are available to him? More specifically, can he compel defendant to institute escheat proceedings?

As to the first question, defendant insists that the informations did not set forth enough facts to entitle plaintiff to the rights of an informer. The statutes upon which plaintiff relies for the escheatability of the property listed by him are the Acts of April 17, 1869, P. L. 71, section 3, and May 2, 1889, P. L. 66, section 3, as amended by the Act of May 11, 1911, P. L. 281, section 1. Section 3 of the Act of 1869 provides: "Whenever any trustee, bailee or other depositary is or shall be seized

or possessed of property, real, personal or mixed, as a fiduciary agent, which property is or shall be without a rightful owner, the same shall escheat to the commonwealth, subject to all legal demands on the same." One of the informations, presumably based upon that statute, is criticized by defendant because, while alleging that certain customers' deposits had no rightful owners, it failed to state they were possessed by the corporations "as a fiduciary agent." Section 3 of the Act of 1889, as amended by section 1 of the Act of 1911, provides, so far as here relevant: "Whensoever the trustee or trustees under a dry trust, and whensoever on the termination of an active trust, or afterwards, the trustee or trustees thereunder is, are, or shall be seized or possessed of any property or estate, real or personal, either the subject of the trust or in any wise arising from the possession of the trust property, or the exercise of the trust, . . . which property or estate is or shall be without a lawful owner, such property or estate shall escheat to the Commonwealth, subject to all legal demands on the same." All of the informations except the one previously mentioned apparently were drafted with reference to this act, but defendant points out their failure to allege that the property scheduled therein was possessed by the corporations as trustees, or that it was "without a lawful owner"; they stated merely that the rightful owners were "unknown." Defendant's further contention is that the name of the last known owner in each case should have been given, and also the fact by reason of which the escheat occurred as required by section 1304 of the Fiscal Code.

It is unnecessary to decide to what extent these criticisms are justified, and whether, because of inadequacy of the informations, plaintiff is barred from making a claim against the Commonwealth, because even assuming—for present purposes—that the informations were sufficient and that plaintiff thereby acquired substantive contractual rights which the State has violated, we are

of opinion that plaintiff cannot be awarded a mandamus against the Secretary of Revenue to compel the institution of proceedings in escheat.

If, in a contract between two private individuals, one agrees, for a consideration received from the other, to pay the latter a certain percentage of the proceeds to be recovered from a suit to be brought by the promisor against a third person on an existing cause of action, and the promisor breaches the contract by failing or refusing to institute the suit, the promisee ordinarily cannot enforce specific performance by compelling the promisor to sue, but will be relegated to such relief as an action for damages will afford. Likewise, if a promisor, for a consideration, contracts to pay his promisee a designated share of the proceeds to be obtained from the sale of a property which the promisor has agreed to make to a third person, and the promisor refuses to proceed, the promisee cannot compel the promisor to complete the sale, but can only bring an action to recover, as damages, the amount he would have received had the transaction been carried out by the promisor in accordance with his agreement.

In the present case these familiar principles are the more controlling because the enforcement of performance is here sought through the instrumentality of a mandamus against a public officer of the Commonwealth. That remedy ordinarily is limited to the enforcement of obligations imposed by law; it is not available where the right rests wholly upon contract: *Independent Brewing Co. of Pittsburgh v. Colonial Trust Company*, 273 Pa. 12, 16; *Barker v. Bryn Mawr College*, 278 Pa. 121, 122. It is true that where the contractual obligation is one which is also imposed by law, it may be enforced by mandamus, not because of the contract but in spite of it; the party to the contract in such a case acquires an interest special to himself as distinguished from that of the general public, thus enabling

him to bring the proceeding in his own name.[2]  But no attempt by mandamus to compel an executive officer to perform an official act can succeed if the act be one as to the performance of which the officer is vested with discretion.  If *some* form of action is mandatory under the law, and the only discretion is with regard to the *method* of performance, mandamus may compel the exercise of the discretion, but without directing the manner of such exercise.  If, however, the discretion be as to whether the act shall be performed at all, performance cannot be judicially decreed: *Respublica v. Clarkson et al., Commissioners,* 1 Yeates 46; *Johnson's License,* 165 Pa. 315; *Homan v. Mackey,* 295 Pa. 82, 86; *Schenley Farms Co. v. McGovern,* 312 Pa. 67, 72; *Johnson v. State Board of Veterinary Medical Examiners,* 46 Pa. Superior Ct. 279, 285; *Commonwealth v. Woodward,* 84 Pa. Superior Ct. 124, 128, 129.

The question arises, therefore, whether defendant, upon receiving an information as to escheatable property, is obliged under the law to institute escheat proceedings in *some* form, or whether he need not proceed in escheat at all.  In his petition for a mandamus, plaintiff asks that the Secretary of Revenue be ordered either to appoint escheators or to request the Attorney General to prosecute an escheat, the appointment of escheators being provided for by sections 205 and 614 of the Fiscal Code, and the provision for the Attorney General himself prosecuting escheats being contained in section 1309.  But the fatal weakness of plaintiff's case is that, while the Secretary of Revenue has a choice between these two modes of escheating, he is not obliged, for reasons that will be pointed out, to institute *any* kind of escheat proceedings.

---

[2] See Act of June 8, 1893, P. L. 345, section 3; *Loraine v. Pittsburg, Johnstown, Ebensburg & Eastern R. R. Co.,* 205 Pa. 132, 135, 136; *Commonwealth v. Woodward,* 84 Pa. Superior Ct. 124, 129.

One such reason is the existence of a statutory method for the recovery by the State of escheatable property without the necessity of escheat. The Act of June 25, 1937, P. L. 2063, section 9, provides that, in the case of escheatable property of the type here involved, the Department of Revenue may, if it thinks such action desirable, suggest to the Attorney General that he apply by petition to the court for an order upon the corporation which is possessed of the money or property, directing its transfer without escheat into the State Treasury. Plaintiff insists that because this statute was not passed until after his alleged contract had been entered into with the Commonwealth it should not be construed to apply retroactively to the present case and thereby affect his rights. While this may be true so far as the matter of his fee is concerned, it is not true in respect to the opportunity it affords the Department of Revenue to acquire escheatable property by a proceeding which is more speedy and advantageous than escheat and saves compensation to escheators and other costs. Moreover, there is some ground for maintaining that this alternative method for the recovery of escheatable property was available under legislation even prior to the Act of 1937, inasmuch as both the Act of May 16, 1919, P. L. 177, (as amended by the Act of April 21, 1921, P. L. 211), and section 1310 of the Fiscal Code provided that in the case of any corporation holding money or property then or thereafter made escheatable by *any* act of the General Assembly, the Attorney General might, upon the request of the Department of Revenue,[3] proceed, on petition to the court, to have payment made into the State Treasury without escheat, just as was similarly provided subsequently by the Act of 1937 in the case of the property specified in that statute. Be this as it may, it is clear that, at least under the latter act, defendant can

---

[3] Under the Act of 1919 the request was to be by the Auditor General.

proceed to recover the property, as to which plaintiff informed, without the necessity of escheat.

Another reason why defendant need not proceed merely because an information is filed lies in the discretion necessarily vested in him to act or refrain from acting according to his belief or disbelief in the truth of the alleged facts. He is not obliged to bring action on behalf of the Commonwealth every time somebody gives him "information" purporting to point out property subject to escheat. He may not have confidence in the reliability of the informer (although there is no intimation to that effect in the present case), or he may be sceptical as to the accuracy of the information.[4] Of course, his discretion should not be arbitrarily or unreasonably exercised, but his responsibility in that regard is to the executive head of the government, and, on final analysis, to the people, and is not a subject for judicial compulsion.

Finally, there is another factor, here conspicuously in the foreground, which necessarily makes the institution of escheat proceedings a matter for the exercise of discretion by the defendant, namely, the degree of certainty or uncertainty of the law respecting the escheatability of the property as to which information is given. Plaintiff admits that the State never before attempted to

---

[4] With regard to this phase of the discussion plaintiff relies upon section 614 of the Fiscal Code which provides: "Whenever, by information or otherwise, the Department of Revenue shall become aware of the fact that any property, real or personal, has escheated, or is supposed to have escheated, to the Commonwealth, under any act of Assembly, it shall have the power, in its discretion, to appoint . . . some suitable person . . . to act as escheator of such property." He argues that defendant necessarily becomes "aware of the fact" that property "is supposed to have escheated" when he receives the "information," but it is impossible reasonably to conclude that this provision was intended to make action by the Secretary of Revenue automatically compulsory without regard to the reliability of the informer or of the information on the basis of which the property is "supposed" to have escheated.

escheat property of the type here in question; he claims that the idea of its escheatability was original with him; he furnished a voluminous brief to defendant for the purpose of convincing him and his counsel that the property as to which he informed was escheatable under the Acts of 1869, 1889, and the 1911 amendment to the latter act. But plaintiff can scarcely contend that the question whether such property was escheatable before the Act of June 25, 1937, P. L. 2063, expressly made it so is not involved in reasonable, or even serious, doubt, notwithstanding the legislative declaration in that act that such property was theretofore escheatable "both under the common law and under the provisions and requirements of existing acts of Assembly." The institution of escheat proceedings necessarily involves the Commonwealth in potential costs and expenses, and it must be obvious that the Secretary of Revenue is no more compelled to start a proceeding than is any private litigant who may believe, or be advised by counsel, that the likelihood of victory is problematical by reason of uncertainty either as to the facts or the law. It is true, of course, that no fee is paid the informer unless the proceedings terminate successfully, but this fact would not compensate the Commonwealth for other fees and expenses that might be incurred or the necessity of having its representatives, over possibly a long period of time, devote themselves to fruitless litigation.

*Miles v. Metzger,* 316 Pa. 211, the case which forms the cornerstone of the edifice erected by plaintiff in his argument, is not pertinent to the question here involved. There the Secretary started and almost concluded escheat proceedings, but later he abandoned them and secured the payment of the escheatable fund into the State Treasury by an order of court under section 1314 of the Fiscal Code. Plaintiff thereupon prayed for a mandamus to compel the payment of his fee as an informer, and this court affirmed a judgment in his favor. While the decision, therefore, upheld the right of the informer

in that case to his compensation, it is no authority for the proposition that the Secretary of Revenue can be mandamused to institute or conduct escheat proceedings for the recovery of property as to which an information has been filed.

The fact that defendant commissioned escheators to recover property from some of the corporations named by plaintiff is wholly without legal significance. The appointments did not operate to estop defendant from maintaining his present contention. Estoppel occurs only where the act alleged to effect it has caused harm to the person asserting it because of action taken by him in reliance upon such act. The commissions having been revoked within ten days, and no action having been taken thereunder, plaintiff suffered no damage from the fact that they were temporarily granted.

Upon the whole, the case resolves itself into this,—that whatever right plaintiff may have to the ultimate recovery of an informer's fee, he does not possess the remedy he now seeks to mandamus defendant to institute escheat proceedings. He complains that if relegated to some other form of action he may be faced by the difficulty of proving what the proceeds in escheat would have been in order to fix the measure of his recovery, and also may be obliged, if the relief granted in *Miles v. Metzger* proves unavailable, to seek a legislative appropriation to satisfy his claim. But if, as in that case, the State obtains the escheatable property by a method other than escheat, the amount of recovery will thereby be fixed. Of course, if the informations filed by him were legally insufficient, he will, as already pointed out, have no cause of action whatever against the Commonwealth. As to the need for an appropriation, that is a matter beyond the purview of the court and a question solely for legislative determination.

Judgment reversed, and here entered for defendant.