## Bar Association of Mercer County v. Lukacs et al.

*C. E. Brockway* and *M. L. McBride*, for petitioners. *John V. Wherry* and *Hiram M. Drake*, for respondents.

Rowley, P. J., December 12, 1941.—This matter is before the court upon petition of the Bar Association of Mercer County for a writ of alternative mandamus requiring Stephen Lukacs, recorder; Harry W. Kremis, prothonotary; Fred L. Hutchison, clerk of courts; Clyde G. Scowden, county treasurer; Alex Elliott, sheriff; James L. Bailey, Albert E. Moses, and D. K. Callahan, county commissioners, and Dunham Barton, controller, "to show cause why they should not keep the court house and their respective offices open continuously from 8:30 a.m. to 5:00 p.m., excepting on holidays commonly observed by the public and on the afternoons of Saturday in order that the practising attorneys and the general public may have access to the public records of the county during the customary business hours of the communities of Mercer County, Pa."

After service of the alternative writ, counsel for respondents moved to quash the writ for the following reasons: "(1) The court is without jurisdiction to grant the relief prayed for; (2) plaintiffs are not shown to have such a beneficial interest as to entitle them to maintain the action; and (3) defendants are not shown to have violated any ministerial duties imposed by law or otherwise."

We shall consider these reasons in the order quoted.

Opposing counsel agree that the motion to quash serves the purpose of a demurrer and tests the legal sufficiency of the case set out in the writ: Spahn v. Bielefeld & Spahn Co. et al., 256 Pa. 543. The motion admits all the facts properly pleaded in the petition: 11 Standard Pa. Practice, secs. 83, 84.

The question now before us is whether the substance of a case has been shown: Spahn v. Bielefeld & Spahn Co. et al., supra.

In Chilli v. McKeesport School District et al., 334 Pa. 581, the court reiterated the established ruling, viz (p. 583):

"Mandamus is not a remedy of absolute right, it is

an extraordinary writ, discretionary with the court, and can only be obtained when there is a clear legal right in the relator and a positive duty of the defendant to be performed, and where there is no other adequate, specific or appropriate remedy; mandamus can never be invoked in a doubtful case: *Homan v. Mackey et al.*, 295 Pa. 82, 85, 96. It may issue to compel a public officer to perform a ministerial duty, but it cannot issue against such officer where there is any discretion to act remaining in him."

In Horowitz v. Beamish, 323 Pa. 273, 275, it was said:

" 'Where a person or body is clothed with judicial, deliberative or discretionary powers, and he or it has exercised such powers according to his or its discretion, mandamus will not lie to compel a revision . . . of such discretion, though, in fact, the decision may have been wrong'."

On the other hand, in Edelman v. Boardman, Secretary of Revenue, 332 Pa. 85, 92, it was said:

"If *some* form of action is mandatory under the law, and the only discretion is with regard to the *method* of performance, mandamus may compel the exercise of the discretion, but without directing the manner of such exercise. If, however, the discretion be as to whether the act shall be performed at all, performance cannot be judicially decreed. . . ."

"If, however, such judgment or discretion is abused, or there is a mistaken view of the law as applied to the admitted facts of the case, the writ will issue to compel action according to law": Johnson v. State Board of Veterinary Medical Examiners, 46 Pa. Superior Ct. 279, 285.

I. Is this court without jurisdiction to grant the relief sought?

Respondents impliedly concede that there is not another adequate remedy at law, but contend that petitioners' case lacks two indispensable elements, viz:

(1) A right in the relator; and (2) a legal duty on respondents to do the thing which relators seek to compel.

Respondents rely largely upon an opinion of this court filed at no. 123, April term, 1930, by our esteemed predecessor. The subject of that proceeding was the closing hours theretofore adopted by the prothonotary, clerk of courts, sheriff, recorder, treasurer and county commissioners. The matter was presented to the court by petition of Mercer County Bar Association for a declaratory judgment requiring that the offices remain open from 8:30 a.m. to 5:00 p.m.

The court refused to enter the decree prayed for.

While the instant question is similar to that involved in the earlier proceeding, we are not certain that it is identical. In view of the fact that the former case was begun by petition for declaratory judgment, it cannot be said that the court has ruled that a mandamus will not issue, although it must be admitted that there is some reason to argue that the court has ruled the question inferentially.

Such an inference finds some support in the following quotation from the court's opinion:

"We were of the opinion when the petition was presented that the court does not have the power to order and direct that the prothonotary's office, the clerk of courts' office, the sheriff's office, the treasurer's office, the recorder's office, and the county commissioners' office shall be open at a certain fixed time and closed at a certain fixed time. After giving the matter more careful consideration, we are still of this opinion, and it would be useless for the court to make a decree that it could not enforce."

However, the foregoing seems to be somewhat modified by a later declaration in the opinion:

"It is clear that the legislature has by legislative enactment declared that the records of the various offices shall be under the direction of the court, and it might be that there is such power given to grant the prayer

of this petition as to the elected court officers, but we are doubtful about such power even as to these offices, *where the matter is brought before the court under a petition such as we have here.*" (Italics supplied.)

This seems to imply that the court's power of supervision does not apply uniformly to all of the officers named as respondents. We are not at all certain that the court's supervision of the offices of prothonotary and clerk of courts is not exceedingly broad, and that supervision of the office of county commissioners is decidedly limited.

For illustration of the point, we cite the Act of June 17, 1839, P. L. 676, 17 PS §1955, which provides in part:

"It shall be the duty of the judges of the courts of common pleas of the several counties of this commonwealth, as often as the recorder of deeds, register of wills or clerk of the orphans' court of any county shall be superseded, *and as much oftener as shall be requisite,* to ascertain if the records, books, indexes and files of their respective offices *be kept* and left as the law contemplates; and if neglect is apparent, to direct the deficiency to be performed by the proper officers. . . ." (Italics supplied.)

Also, in 17 PS §1956:

"It shall be the duty of the judges of the several courts of this commonwealth, as often as the prothonotaries or clerks of their respective courts shall be superseded, and *as much oftener as they may deem expedient,* to ascertain whether the books, files, indexes and papers of the respective offices are *kept* and left as the law contemplates; and if neglect and deficiency appear, to direct the same to be performed by the proper officer. . . ." (Italics supplied.)

In view of the conclusion we have reached in this matter, we deem it inadvisable to discuss, at this stage of the proceeding, the full import of the above-quoted provisions.

In Scowden's Appeal, 96 Pa. 422, the court considered a statute which provided for the holding of court in other places than the county seat, and required certain county officers to attend such sessions, and to bring with them such papers and documents as might be required in the transaction of the business of the court.

In declaring the statute unconstitutional the court pointed out that the Constitution required such officers to keep their offices in the county town.

The court said (p. 426):

"The plain meaning of the words 'shall keep their offices in the county town,' is that the officers referred to shall keep the records and papers pertaining thereto at the county seat. It does not mean that they shall keep a room there with bare walls and empty pigeon holes."

The court then takes notice of the right of the public to inspect and use the public records, and of the duty of the officers to provide reasonably convenient opportunity for such inspection and use, in these words (p. 426):

"Aside from the danger of the destruction or loss of the public records consequent upon their periodical removal to distant points, the *public inconvenience resulting therefrom would be* intolerable." (Italics supplied.)

There can be little doubt of the power of the court to supervise the county offices to prevent an intolerable inconvenience to a considerable number of citizens who require frequent access to such offices.

We do not imply that the office hours now maintained by respondents do create an intolerable inconvenience, but we are aware of no principle of law which would warrant us in declining to examine the extent of the inconvenience.

In the famous case of Marbury v. Madison, 1 Cranch 49 (U. S.), the Supreme Court of the United States entertained a petition for mandamus to require President Jefferson's Secretary of State to deliver to a jus-

tice of the peace the certificate of his appointment executed by President Adams a few hours before Jefferson's inauguration. The action of the court aroused Jefferson, who complained that the judges were invading the executive department.

Notwithstanding that the court finally entered judgment against issuing the writ, the President and his supporters proclaimed it outrageous that the court consented to rule upon the question. In the course of the opinion the court asks: To whom may a citizen turn for relief, when he believes he is aggrieved, if not to the courts?

The same query is pertinent here.

In Jones v. O'Connor, 252 Pa. 311, a writ was issued requiring a judge to hear a case in the courthouse in the county seat instead of in his chambers in another city.

The instant petition contains no direct averment that patrons of the offices are unduly hampered by the office hours now being maintained. It may be that such an inference may be drawn from the petition but the matter is not free from doubt.

The motion to quash admits the averments of the petition, but we are not clear that the facts as stated would warrant us in awarding the writ without either a more direct averment or proof of the effect of the present office hours.

Paragraph VI of the petition avers a belief that all persons should have the right of entering the respective offices between 8:30 a.m. and 5:00 p.m.

Paragraph VII avers an agreement by respondents to keep the offices open until 5 p.m.

Paragraph X avers that persons should be able to use the offices during the customary business hours of the day continuously from 8:30 a.m. to 5:00 p.m.

We are not to be understood as holding that the present petition is insufficient to warrant the writ, after a

hearing, but we are of the opinion that the right of relators and the duty of respondents must be clearly and definitely averred and admitted by demurrer, or proved upon hearing before the writ may issue.

II. Are plaintiffs entitled to sue out the writ?

Respondents contend that the instant writ could only issue at the relation of the district attorney.

In Loraine v. Pittsburgh, Johnstown, Ebensburg & Eastern R. R. Co., 205 Pa. 132, the court discussed the right of a private relator (pp. 135-36):

"The test of right of a private relator to the writ is not . . . whether the duty sought to be performed be a public one, but whether the complainant by breach of the public duty has suffered an injury special and peculiar to himself."

"True, the act [June 8, 1893] directs that when the writ is sought to procure the performance of a public duty only the proceeding shall be in the name of the commonwealth at the relation of the attorney general or the district attorney of the proper county, but it also provides in the 3rd section, that it shall issue on the application of any person beneficially interested. While we have no doubt, that these words would give standing to anyone interested to make application to the attorney general for his intervention, they just as clearly save to each person the right existing before the act, to sue out the writ when he seeks to protect an interest, special to himself as distinct from the general public."

We have no difficulty in concluding that the members of the Mercer County Bar Association have a special interest in the matter of opening and closing of the county offices, which interest is peculiar to them and distinct from the general public.

III. The third reason assigned for the motion to quash is that "respondents are not shown to have violated any ministerial duties imposed by law or otherwise."

Respondents presumably contend that the hours during which a county officer shall permit the inspection of the public records maintained by him rest wholly in the discretion of the officer. Even if we were prepared to concede that the matter is discretionary, mandamus would nevertheless issue to review an alleged abuse of discretion.

"A peremptory writ was issued requiring the mayor of Philadelphia to perform his duty in *Chelten Trust Co. v. Blankenburg*, 241 Pa. 394, 88 A. 664, notwithstanding the fact that he asserted that he was acting in the exercise of discretion": Commonwealth ex rel. v. Pommer et al., 330 Pa. 421, 439.

By reason of the intimate relations among the courts, the bar, and the various county officers, we are unwilling at this stage of the proceeding to hold that an officer charged with the custody of public records need have no regard for the convenience of the bar in establishing opening and closing hours.

A controversy between the bar association and various county officers as to hours of opening and closing has persisted for many years. The matter should be disposed of upon its merits rather than upon a doubtful question of pleading.

Our conclusion is that the motion to quash must be overruled, but that we are not warranted in entering final judgment without proof that the present schedule of office hours unduly limits access to the offices involved.

We have preferred to postpone a general discussion of many points involved lest upon final hearing it appear that some matter has been prejudged.

We have not considered the power of the court to adopt a rule establishing the hours during which certain of the county offices shall remain open.

### Order

And now, December 12, 1941, this matter came on for argument upon respondents' motion to quash the

writ, whereupon, after due consideration, it is ordered, adjudged, and decreed that the motion to quash be overruled, with leave to respondents to plead over.