Dombrowski *v.* Philadelphia, Appellant.

Argued January 16, 1968. Before MUSMANNO, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Levy Anderson,* First Deputy City Solicitor, with him *Allan H. Gordon,* Assistant City Solicitor, and *Edward G. Bauer, Jr.,* City Solicitor, for appellants.

*Henry W. Sawyer, III,* with him *R. Phillip Steinberg,* for appellee.

*Herbert A. Fogel,* for amicus curiae.

OPINION BY MR. JUSTICE ROBERTS, August 6, 1968:

Edwin L. Dombrowski, appellee, was employed by the City of Philadelphia as chief of general accounting from July, 1952 to June, 1966. Under Philadelphia's municipal retirement plan he is entitled to retirement benefits commencing in August, 1972. Alleging that §2-308 of Philadelphia's Home Rule Charter requires an "actuarially sound pension and retirement system" and that the city's contributions in 1966 and 1967 were insufficient to maintain its retirement system on an actuarially sound footing, Dombrowski instituted an action of mandamus to compel appellants to make the necessary appropriations.

Given the complexity of the issues raised, Judge SPAETH of the Court of Common Pleas of Philadelphia County was specially appointed to hear and determine this litigation. Preliminary objections were denied, expert testimony taken and an extensive opinion prepared. The court below found that the appropriations made by the city were in fact insufficient to maintain the retirement system in an actuarially sound condition.[1] It ordered Philadelphia to allocate to the

---

[1] Judge SPAETH concluded, based upon expert testimony produced by appellee and the city (the two experts in all material particulars agreed), that, for a public retirement system, actuarial

retirement system $20,000,000 in 1967, $40,000,000 in 1968[2] and for each year after 1968 until all of appellee's retirement benefits have been paid an amount determined by the city's actuaries sufficient to meet the system's normal cost plus interest on its unfunded accrued liability. This appeal calls into question only two aspects of the litigation: (1) appellee's standing to institute a mandamus action and (2) the scope of the order entered. The city does not on appeal question the conclusion of the court below that its annual contributions for 1967 and 1968 were insufficient to meet the standard of actuarial soundness required by the Home Rule Charter.[3]

---

soundness requires that the municipality contribute a sum of money each year sufficient to cover the "normal cost" for that year plus interest on the system's "unfunded accrued liability." Normal cost is that amount which must be contributed annually to provide benefits upon retirement for present city employees based upon *their current and future service.* Unfunded accrued liability is the amount required to provide retirement benefits for employees covered by the system based upon their service *prior to the current year.* Since it is unlikely that a municipality will cease to exist (as contrasted with the typical private, corporate retirement system), actuarial soundness demands that the public retirement system be, as the experts testified, only "partially funded," i.e., the contributions to the system each year must be sufficient to cover normal cost plus *interest* on the system's unfunded accrued liability. Where the appropriations are not sufficient to meet this amount, the accrued liability increases until the system is forced to operate on a cash disbursement basis (a pay-as-you-go system), a system which even the city's expert agreed was actuarially unsound and contrary to the Charter.

[2] The order, in part, required: "1. Defendants shall appropriate and allocate to the Retirement System the following amounts: (a) For 1967: interest on the System's unfunded accrued liability, being $20,937,412.50; (b) For 1968: the City's share of the System's normal cost, being $19,057,000.00, plus interest on the System's unfunded accrued liability, being $20,937,412.50; . . . ."

[3] Given the fact that both experts agreed as to the content of the Charter's requirement of actuarial soundness, see footnote 1, supra, this is understandable.

## I. Standing To Sue

### A. The Sufficiency of Dombrowski's Interest

The dispositive question on this issue, as the parties have correctly recognized, is whether Dombrowski's interest is sufficient to allow him to maintain a mandamus action in his own name. The city contends that in an action to enforce §2-308 of the Charter only the Attorney General or the District Attorney of Philadelphia County has the requisite standing. Appellants insist that their position is supported by the language of the Mandamus Act of 1893, Act of June 8, 1893, P. L. 345, §3, 12 P.S. §1913; appellee disputes this point and further argues that, if the cases decided pursuant to the Mandamus Act do support appellants, these cases were impliedly overruled by the promulgation of Pennsylvania Rule of Civil Procedure 1092, one of the rules governing mandamus actions.[4]

---

[4] Pa. R. C. P. 1457, effective January 1, 1947, suspends the 1893 Mandamus Act insofar as the rules of civil procedure apply to practice and procedure; subsection (c) of that rule specifically suspends §3 of the Act of 1893. Our rules of civil procedure, promulgated under the Act of June 21, 1937, P. L. 1982, §1, as amended, 17 P.S. §61, have the force of a statute. See *Schofield Discipline Case*, 362 Pa. 201, 209, 66 A. 2d 675, 679 (1949); *Lojeski v. Quirk*, 202 Pa. Superior Ct. 471, 473, 198 A. 2d 410, 411 (1964). In *Strank v. Mercy Hospital of Johnstown*, 376 Pa. 305, 309 n.2, 102 A. 2d 170, 172 n.2 (1954), this Court opined that the rules of civil procedure made no change in the "scope of mandamus." In the context of the *Strank* facts, this statement is not dispositive as to whether Rule 1092 broadened the standing accorded to private mandamus plaintiffs, for the question confronting the Court was whether the trial court had jurisdiction to issue the writ against a private hospital based upon a claim that the hospital had refused to give plaintiff, a student nurse, transfer credits for courses she had completed. We held that our courts did not possess jurisdiction to compel a *private* hospital to grant the credits. Read broadly, the quoted language would indicate that the rules of civil procedure did not modify standing requirements; however,

We are convinced that Rule 1092 has not broadened the standing for private mandamus actions for the simple reason that, with the possible exception of *Davidson v. Beaver Falls Council,* 348 Pa. 207, 34 A. 2d 505 (1943), our cases have charted a consistent course in this area both before and after the effective date of Rule 1092. Nevertheless, this consistent course, we believe, demonstrates that Dombrowski's interest is sufficient to support a mandamus action brought in his private capacity.

Section 3 of the Mandamus Act provides: "The writ of mandamus may issue upon the application of *any person beneficially interested.*" (Emphasis supplied.) Section 4, Act of June 8, 1893, P. L. 345, §4, 12 P.S. §1914, then states: "When the writ is sought to procure the enforcement of a public duty, the proceedings shall be prosecuted in the name of the commonwealth on the relation of the attorney general: . . ."[5] Two of our early cases, both decided prior to the adoption of the Mandamus Act of 1893, tell us that a private litigant may maintain a mandamus action to enforce a public duty when that plaintiff has an individual and beneficial interest in the litigation independent of that which is held by the public at large. *Commonwealth ex rel. Snyder v. Mitchell,* 82 Pa. 343 (1876); *Heffner v. Commonwealth ex rel. Kline,* 28 Pa. 108 (1857).

Subsequent cases did not work a change in this rule. *Loraine v. Pittsburg, Johnstown, Ebensburg & Eastern Railroad Co.,* 205 Pa. 132, 54 Atl. 580 (1903) may be fairly termed the leading post-Mandamus Act, pre-rules of civil procedure case on the standing of a private plaintiff. Loraine, a coal mine operator, sued defendant-common carrier in mandamus, alleging that

---

confined to the issue before the court, the language means only that the rule did not broaden jurisdictional requirements.

[5] Appellee does not dispute the conclusion of the court below that his action is brought to enforce a public duty.

the railroad had failed to perform its statutory duty as a common carrier by its refusal to transport plaintiff's coal unless that coal was to be sold to a coal company specified by the carrier. We held that this private plaintiff had standing and that the writ should issue, stating the proper rule for standing as follows (id. at 136, 54 Atl. at 581-82) : "True, the act directs that when the writ is sought to procure the performance of a public duty only the proceeding shall be in the name of the commonwealth at the relation of the attorney general or the district attorney of the proper county, but it also provides in the 3d section, that it shall issue on the application of any person beneficially interested. While we have no doubt, that these words would give standing to any one interested to make application to the attorney general for his intervention, *they just as clearly save to each person the right existing before the act, to sue out the writ when he seeks to protect an interest, special to himself as distinct from the general public.*" (Emphasis supplied.) See also *Stegmaier v. Jones*, 203 Pa. 47, 52 Atl. 56 (1902). The *Loraine* Court declared that it was irrelevant that plaintiff was not the only shipper so restricted by the railroad for his injury, along with others so situated, was special.[6]

---

[6] Our cases, when determining whether the private mandamus plaintiff has a sufficient interest to maintain the action, have interchangeably used various formulations to state the requisite interest. We have thus inquired whether plaintiff has a "beneficial interest," whether he is asserting a right "which is independent of a right held in common with the public at large," or whether he is protecting an interest in himself "distinct from that of the general public." 11 Std. Pa. Practice, ch. 46, §§21-23 (1964) ; see *Dorris v. Lloyd (No. 1)*, quoted in text, infra; *Butcher v. Philadelphia Civil Service Commission*, 163 Pa. Superior Ct. 343, 61 A. 2d 367 (1948). We do not believe that any of the above formulations portends a different test than that found in Pa. R. C. P. 1092(c) : "An action brought in the name of a party to en-

The *Loraine* analysis was employed in *Common-wealth ex rel. Attorney General v. Mathues,* 210 Pa. 372, 59 Atl. 961 (1904), a case presenting the converse issue, i.e., did the Attorney General have standing to maintain the mandamus action. Plaintiff-Attorney General alleged that the state treasurer had refused to disburse funds appropriated for an increase in judicial salaries. The lower court opinion, reprinted in our reports, stressed that this withholding of judicial salaries was a matter of sufficient public concern to allow the Attorney General to request the writ. However, despite the reading given *Mathues* in the city's brief, the opinion in no way intimates that an individual judge, if he so wished, would have lacked standing to sue and, in fact, the opinion states that his special interest, shared with other judges, would support a private mandamus action.[7]

The leading post-rules case again reiterates that the relevant inquiry is whether the private plaintiff possesses an interest which is not shared by the public at large. In *Dorris v. Lloyd (No. 1),* 375 Pa. 474, 100 A. 2d 924 (1953), cert. denied, 347 U.S. 936, 74 S. Ct. 632 (1954) plaintiff, as county chairman of the Democratic Party, brought mandamus against the Board of Elections of Luzerne County, alleging that the Board

force a right or to compel performance of a public act or duty in which the [private] party has a *beneficial interest distinct from that of the general public* . . . ." (Emphasis supplied.)

[7] *Commonwealth ex rel. Attorney General v. Mathues,* supra at 377, 59 Atl. at 963: "The public at large is most essentially . . . interested in the maintenance of the judiciary as one of the necessary and independent divisions of the government; . . . and the question is one of such public importance that the enforcement of the public duty to pay, under authority of law, the salaries of the judiciary, is one which should not depend upon the willingness of any individual judge, in his private capacity, to attempt to enforce *his right* as a matter of private benefit." (Emphasis supplied.)

had failed, as required by statute, to control the conduct of primary elections and to investigate election frauds. We stated (id. at 477, 100 A. 2d at 926): "Even before the passage of the [mandamus] act it had been uniformly held that when public rights are to be subserved only public officers may, ordinarily, apply for the writ, and that a private individual cannot do so unless he can show some particular right or privilege of his own independent of that held in common with the public at large: [citations omitted]. Since the passage of the act there have been numerous authorities holding to the same effect, namely that, where the duty of an officer under a statute is a public one, it can be enforced only at the suit of the attorney general or the district attorney of the proper county *or by a private citizen who has a specific and independent legal right or interest in himself different from that of the public at large* or who has suffered an injury special and peculiar to himself: [citations omitted.]"[8] (Emphasis supplied.) Against these cases, spanning one hundred years and announcing the rule that our inquiry is whether the private plaintiff is asserting an interest "different from that of the public at large," appellants pit one authority, *Davidson v. Beaver Falls Council,* 348 Pa. 207, 34 A. 2d 505 (1943). They insist that *Davidson* stands for the proposition that we must examine not whether the private plaintiff has an interest distinct from the public at large (here, the citizens of Philadelphia) but whether his interest is distinct from that which he shares with all other

----

[8] Applying this test, we held that plaintiff had no standing for the injury he suffered by the Board's alleged failure to perform its statutory duties was one he shared equally with the general public for the investigation of election frauds and the control of the conduct of elections is a matter in which all members of the public had an equal concern.

members of the municipal retirement system.[9] Davidson was a Beaver Falls policeman. He claimed that Beaver Falls should have established a retirement system for policemen in 1930 rather than 1941, the date it was established, and asked that Beaver Falls be compelled to contribute at maximum rates all it could, since 1930, have contributed. In what is, at best, an alternative holding,[10] we said (id. at 210, 34 A. 2d at 506) : "The establishment and administration of the Police Pension Fund is a public duty; Davidson's interest was not different from that of other policemen in or other residents of the city. He may or may not in the future become eligible to retirement pay. He is not now suffering any special private damage or injury differing in kind and not alone in degree from that suffered by the residents generally."

To the extent that *Davidson* states that the relevant group is not the public at large, it is a departure from both prior and subsequent cases and therefore is disapproved. Furthermore, it is clearly distinguishable even if all its language is given a broad reading. Davidson was entitled to retirement benefits only *after*

---

[9] The city also relies upon language contained in the unreported lower court opinion in *Davidson* (reprinted in appellant's brief at 16) : "In the instant case the relief sought is essentially the making of such contributions to the pension or retirement fund by the city as plaintiff believes are necessary to its proper maintenance and administration. We think this involves the performance of a public duty, not the assertion of a private interest . . . ."

[10] The primary basis for *Davidson*, as more fully explicated in *Commonwealth ex rel. Coghlan, District Attorney v. Beaver Falls Council*, 355 Pa. 164, 49 A. 2d 365 (1946), was that the amount of money appropriated by a municipality under the statute was, within certain limits, discretionary and thus there was no enforceable duty cognizable in mandamus under the general rule that mandamus does not lie to compel a discretionary act. There is no dispute in the present appeal as to the conclusion of the court below that the Charter's requirement that the pension system be actuarially sound is mandatory.

a minimum of twenty years continuous service. See Act of June 23, 1931, P. L. 932, §4302, as amended, 53 P.S. §39302 (Supp. 1967). At the time of suit, he had been serving as a Beaver Falls policeman continuously from February 21, 1928, a period of less than twenty years. See *Davidson v. City of Beaver Falls,* 38 Pa. D. & C. 47, 49 (C.P. Beaver Cty. 1939). He was thus, at the time he brought his action, not entitled to retirement benefits and, as will be discussed more fully in text, infra, he had no vested interest in future retirement benefits which he might never, by virtue of either death or early retirement, receive. See Anderson, Vested Rights in Public Retirement Benefits in Pennsylvania, 34 Temple L.Q. 255, 259-60 (1961). The sequel to *Davidson, Commonwealth ex rel. Coghlan, District Attorney v. Beaver Falls Council,* 355 Pa. 164, 49 A. 2d 365 (1946), a suit brought by the Commonwealth to compel the same payments demanded in *Davidson,* makes clear that Davidson's action was dismissed not because the relevant group was other than the public at large but for the simple reason that Davidson had not yet obtained a vested interest in retirement benefits.

Having concluded that the correct test for standing is whether Dombrowski possesses an interest in the proper administration of Philadelphia's retirement system distinct from that which he shares with the general public, we must determine if appellee does have such an interest. The city insists that, since appellee will not be entitled to retirement benefits until 1972, he lacks the requisite interest.[11] We believe this ar-

---

[11] The city's brief clearly implies that, if appellee was presently drawing benefits, he would have standing. In view of appellee's vested right in these benefits and his contractual relationship with the city (developed fully in text, infra), it is immaterial whether the private plaintiff is now drawing benefits or whether those benefits, now vested, will be received in the future.

gument to be unsound for it ignores both the fact that appellee's interest in his retirement benefits is vested and that, having fulfilled those requirements which pre-condition his right to receive these benefits, he has entered into a contractual relationship with the city. Of course, appellee's vested right to his retirement benefits, and his contractual relationship to the city and its retirement system are interests he does not share with the general public and which he holds independent of the public.

A long line of our decisions holds that, when an employee has satisfied the conditions placed by a retirement system upon his right to retirement benefits (there is no dispute that appellee has satisfied these conditions, e.g., years of continuous service, contributions to the system, etc.), his right to retirement benefits becomes vested with only the enjoyment thereof postponed. *Harvey v. Allegheny County Retirement Board*, 392 Pa. 421, 428, 141 A. 2d 197, 201 (1958); *Hickey v. Pittsburgh Pension Board*, 378 Pa. 300, 311, 106 A. 2d 233, 238 (1954); *Baker v. Retirement Board of Allegheny County*, 374 Pa. 165, 97 A. 2d 231 (1953); *Haldeman v. Hillegass*, 335 Pa. 375, 384, 386, 6 A. 2d 801, 808, 809 (1939); *Retirement Board of Allegheny County v. McGovern*, 316 Pa. 161, 174 Atl. 400 (1934). It is equally well established that the employee's relationship vis-a-vis the municipality and its retirement system is contractual. See *Harvey v. Allegheny County Retirement Board*, supra at 431-32, 141 A. 2d at 203; *Wright v. Allegheny County Retirement Board*, 390 Pa. 75, 134 A. 2d 231 (1957); *Hickey v. Pitts-*

---

Appellee is also entitled, under §204.3 of the Municipal Retirement System Ordinance, at any time prior to the attainment of his minimum retirement age to withdraw the total contributions credited to his retirement account in the retirement system. Finally, if appellee should die prior to reaching his retirement age, under §205, his survivor is entitled to survivorship benefits.

*burgh Pension Board,* supra at 305, 309, 106 A. 2d at 236, 238; *Haldeman v. Hillegass,* supra at 384, 386, 6 A. 2d at 808, 809. The relationship between these two rules has been aptly stated by First Deputy Philadelphia City Solicitor Anderson, counsel for appellants: "The entire theory of 'vested rights' in public retirement benefits is a direct outgrowth of the contractual concept."[12]

The relevancy of Dombrowski's vested right and his contract with Philadelphia as this bears upon his standing is illustrated by *Edelman v. Boardman, Secretary of Revenue,* 332 Pa. 85, 2 A. 2d 393 (1938). Edelman brought a mandamus action in his own name to compel the Secretary of Revenue to escheat certain property so that plaintiff could collect his informer's fee. We held that Edelman had standing (supra at 91-92, 2 A. 2d at 396) : "It is true that where the contractual obligation is one which is also imposed by law, it may be enforced by mandamus, not because of the contract but in spite of it; the party to the contract in such a case acquires an interest special to himself as distinguished from that of the general public, thus enabling him to bring the [mandamus] proceeding in his own name." Similarly, Dombrowski's contractual relationship with the city stems from a duty imposed by law, i.e., the creation and administration of a retirement system, and, as a party to the contract, he has standing.

Finally, with the possible exception of *Davidson,* we have consistently entertained mandamus actions brought by a member of a retirement system to enforce statutory commands which would benefit all members

---

[12] Anderson, Vested Rights in Public Retirement Benefits in Pennsylvania, 34 Temple L.Q. 255, 259 (1961).

of the system.[13]  Thus, in *Retirement Board of Allegheny County v. McGovern,* supra at 178, 174 Atl. at 408, this Court noted: "While an employee may have an interest or vested right in the fund to protect it from insolvency, that right cannot be worked out by refusing to contribute, but rather in an effort to compel the county in a proper proceeding to make good its payments as directed by the legislature, or to redress other bad practices."  The "proper proceeding" to which *McGovern* referred is obviously mandamus for the simple reason that *McGovern* was a mandamus action brought by a private plaintiff to compel the municipality to appropriate funds which would benefit all members of the retirement system, and the issuance of the writ was affirmed.  See also *Haldeman v. Hillegass,* supra at 381, 6 A. 2d at 806; *Ackerman v. City of Williamsport,* 11 Pa. D. & C. 2d 421 (C.P. Lycoming Cty. 1957) ; *Firemen's Pension Fund v. Minnaugh,* 80 Pa. D. & C. 297, 309 (C.P. Dauphin Cty. 1951).

It could be argued, as does the dissent, that *McGovern* was not brought by a private plaintiff.  This mandamus action was instituted by the majority of the retirement board, consisting of one county commissioner, the treasurer, controller and two persons elected from the system, against a minority of the board. None of these parties is the Attorney General or the district attorney of the appropriate county; they are private plaintiffs in the only sense here relevant, i.e., since the parties in *McGovern* were neither the Attorney General or a district attorney, they could bring an action under the Mandamus Act only if they were

---

[13] We do not here rely upon the even more numerous cases in which mandamus was employed by a member of a retirement system to compel the payment of benefits which he alleged were presently owing to him.

beneficially interested persons. It should be evident that the term private plaintiff is used throughout our decision to encompass that group of plaintiffs not the Attorney General or the district attorney of the appropriate county. Furthermore, to hold that members of the retirement board have a sufficient beneficial interest to bring mandamus while members of the system do not is the equivalent of insisting that persons not having a vested right to benefits may sue but those having such a right cannot.

As recently as 1966 we entertained a mandamus action brought by a private plaintiff to compel payments. See *Taylor v. Abernathy*, 422 Pa. 629, 222 A. 2d 863 (1966). If anything, plaintiff-Taylor's interest was weaker than that of Dombrowski for, at the time suit was brought, under the existing retirement system Taylor was no longer entitled to any retirement benefits.[14] We thus conclude that Dombrowski's vested interest in his retirement benefits and his contractual relationship with the city are interests he holds independent of the public at large.[15]

---

[14] Although the *Taylor* Court did not specifically use the term standing in its opinion, the question presented (as phrased by both parties in their briefs) was whether plaintiff had an enforceable or vested right, the very concepts which we believe sustain Dombrowski's standing. It thus seems clear that implicit in *Taylor* was a recognition by this Court that plaintiff did have standing.

[15] We note that in many other cases private plaintiffs with interests no more separate and substantial than that of Dombrowski have been accorded standing. For example, owners of property abutting a highway have a sufficient interest to compel officials to keep this road in repair, *Lank v. Hughes*, 402 Pa. 284, 167 A. 2d 268 (1961), *St. David's Church v. Sayen*, 244 Pa. 300, 90 Atl. 638 (1914); members of a county bar association have a sufficiently special interest in hours when county offices shall be kept open to bring mandamus to have these offices open for longer hours than they previously had been kept open, *Bar Association of Mercer County v. Lukacs*, 42 Pa. D. & C. 619 (C.P. Mercer Cty. 1941);

## B. The Immediacy of Dombrowski's Injury

Alternatively, the city argues that, if appellee's interest is sufficiently distinct, his injury is not sufficiently immediate to sustain an action in his name.[16] Although much of what has already been said is sufficient to demonstrate that this contention lacks merit, it does deserve brief treatment.

Dombrowski's complaint, see footnote 1, supra, was premised upon his belief that the city's contributions to its retirement fund were insufficient to keep it on an actuarially sound basis. As the testimony below disclosed, the present and past practices had placed the system on an actuarially unsound basis and, if continued, the unsoundness would progressively increase. In essence, then, Dombrowski was attempting to assure himself and all other members of the Philadelphia municipal retirement system that sufficient funds would be present to meet his and others' retirement payments.[17] Part of his contract with the city

and a private individual, alleging that she has been mistreated by police, has standing to compel a city mayor, as required by statute, to appoint members to a police review board, *Brown v. Snyder, Mayor of City of York*, 40 Pa. D. & C. 2d 286 (C.P. York Cty. 1966).

[16] In terms of the immediacy of Dombrowski's injury, this suit is in some respects similar to a taxpayer's action. The taxpayer's standing is often justified on the grounds that such an action is a necessary vehicle to deter illegal governmental action. See *Price v. Philadelphia Parking Authority*, 422 Pa. 317, 325-30, 221 A. 2d 138, 143-45 (1966); Jaffe, Standing To Secure Judicial Review: Public Actions, 74 Harv. L. Rev. 1265 (1961); Notes, Taxpayers' Suits: A Survey and Summary, 69 Yale L. J. 895 (1960).

[17] Actuarial soundness also serves an additional function. It insures that the tax burden generated by the city's contributions to the fund will be distributed in such a manner that 1967 taxpayers are taxed for the benefits earned by 1967 employees. Where the system is operated on a cash disbursements basis, see footnote 1, supra, 1967 taxpayers would be taxed to pay for benefits earned by employees in past years; furthermore, positing the typical in-

was a promise made by the city, in its Home Rule Charter, that the retirement system would be actuarially sound. The court below found, a finding not here disputed, that the city had not kept its promise. Dombrowski is thus suffering a present impairment of his contractual rights and thus an immediate injury.

Neither of the two authorities advanced by appellants are contrary to this conclusion. In *Commonwealth ex rel. McLaughlin v. Erie County*, 375 Pa. 344, 100 A. 2d 601 (1953) a mandamus action was brought to compel Erie County to allocate to the City of Erie a portion of the tax revenues it received from the Commonwealth under a statute requiring that these funds be distributed to local governmental units for bridge and highway purposes. We held that the city had not complied with certain conditions in the statute attaching before it had a right to the funds, and thus it did not have an immediate, legal right to the funds. It is not disputed that Dombrowski has complied with all the requirements which condition his right to receive retirement benefits and, as discussed above, he has an immediate, legal (and contractual) right to an actuarially sound pension system.

The city relies most heavily upon *Geary v. Allegheny County Retirement Board*, 426 Pa. 254, 231 A. 2d 743 (1967). *Geary* called into question the constitutionality of an act which permitted Allegheny County policemen to retire at 55 instead of the age previously established (60). The basis of this constitutional challenge was that the reduction in the retirement age decreased the actuarial soundness of the retirement fund and therefore, under the vested rights and contract cases, the municipality's contracts with the employees were *unconstitutionally* impaired. Without dis-

---

crease each year in municipal employees and benefits, the burden placed on future taxpayers to meet benefits currently being earned (as well as those previously earned) would be even greater.

cussing standing, we stated (supra at 259, 231 A. 2d at 746) : "[T]he fact that the Court [in *Harvey v. Allegheny County Retirement Board*] concluded that an enhancement of the actuarial soundness of a fund was sufficient to prevent an increase in the age or length-of-service requirement for employees not yet eligible from being unconstitutional does not mean . . . that a decrease in actuarial soundness is by itself sufficient to constitute a deprivation of vested rights or an impairment of contractual rights. Thus, bearing in mind the strong presumption in favor of the constitutionality of legislation [citation omitted], we conclude that a *legislative alteration* of retirement laws whose only adverse effect on participants . . . is to increase a *theoretical possibility* that payments to them will not be met is not a sufficiently concrete detriment to constitute a violation of *constitutional* guarantees." (Emphasis supplied.) *Geary*, on its face, is distinguishable on three separate grounds. First, Dombrowski is not protesting a legislative alteration of his pension system but rather a failure of the city to follow the plan *it* enacted and, for these purposes, has never amended. Second, there is nothing theoretical or possible about Dombrowsky's injury—the court below found that the city's retirement system was *actually* and *presently* unsound. Third, Dombrowski is not insisting that his constitutional right prohibiting the impairment of contracts has been violated by a legislative change but, simply, that the city is not presently fulfilling its contractual obligations.

Appellants lastly advance as justification for their belief that appellee's injury is not sufficiently immediate §116.1 of the Municipal Retirement System Ordinance which provides that the obligations of the pension fund shall be obligations of the City of Philadelphia. Although the relevance of this provision is not

immediately apparent, we assume that the city is suggesting that Dombrowski, if his retirement benefits are not received, can sue the city, enter judgment and execute upon city property. However, his ability to do so, in our view, does not make his injury less immediate for the fact that the obligations of the retirement system are the obligations of the city does not relieve the city of its duty to maintain its system on an actuarially sound basis. It is Dombrowski's contractual relationship with the city that is impaired by the city's failure to comply with its own Home Rule Charter and this immediate impairment supports his standing; that appellee might be able through judgment and execution to obtain the funds due him in 1972 does not prevent him from asserting in 1968 a present impairment of contractual rights.

We conclude that Dombrowski's suit was properly brought in his individual capacity as a member of the Philadelphia municipal retirement system.[18]

## II. The Propriety of Issuance of the Writ

### A. The Scope of the Pleadings and Proof

The city next contends that the order issued by the court below is beyond the scope of the relief requested and that, therefore, it was improper. The basis for this argument is appellants' belief that the court was confined to the specific prayer for relief contained in appellee's complaint, i.e., that the city appropriate sufficient funds to meet its normal cost for 1966 and

---

[18] We thus do not rely, as we did in one case, upon the "exigency" of the situation to support plaintiff's standing. See *Mayer v. D'Ortona*, 408 Pa. 518, 184 A. 2d 582 (1962), overruled on other grounds, *Mayer v. Hemphill*, 411 Pa. 1, 190 A. 2d 444 (1963).

1967.[19] Admittedly, the order entered goes beyond this specific prayer by requiring the city to make sufficient appropriations to place its retirement system on the actuarially sound basis dictated by the Charter—the city was ordered to make sufficient provision for both normal cost *and* interest on unfunded accrued liability. See footnote 2, supra.

We must begin by noting that the city certainly was not misled by Dombrowski's complaint; it knew that the concept of actuarial soundness embodying both normal cost and unfunded accrued liability was in issue. Not only was the city prepared with expert testimony on this point, but the complaint clearly put this matter in issue. Paragraph 9 of the complaint pleads §2-308 of the Charter, the section requiring city council to adopt an actuarially sound retirement system. Paragraph 12(e) then alleges: "In order for a public pension system to be 'actuarially sound,' as that term is properly defined, there should be contributed to the system each year both (i) the 'normal cost' of the system and (ii) an amount equivalent to the interest which would have been earned by a deposit equivalent to the 'unfunded actuarial liability' of the System." Finally, paragraph 30 adds:

"It is estimated that the proposed amendments to the Municipal Retirement System Ordinance [amendments which were subsequently passed] will add at least $8 million to the 'normal cost' to the City of its Municipal Retirement System for the year 1967, making the total 'normal cost' of said System in 1967 ap-

---

[19] The city also calls to our attention several statements made during trial by appellee's counsel which indicate that appellee's primary desire was to compel the city to appropriate sufficient funds to cover its normal cost. However, during these colloquies counsel was careful to note that he in no way was intimating that the trial court lacked power to enter an order differing from the specific relief requested.

proximately $28.6 million. (In addition to the City's 'normal cost' for 1967 of $28.6 million, if Bill No. 2318 is adopted [it was], the amount equivalent to the interest on the 'unfunded actuarial liability' of the System for 1967 is not less than $16.9 million, which would require a minimum City contribution in 1967 of not less than $45.5 million to make the Municipal Retirement System 'actuarially sound' as that term is properly defined with respect to public pension systems.)"

The city's contention that the court was powerless to render an order beyond the relief specifically prayed for gives no effect to the general prayer for relief also contained in the complaint, i.e., "to grant such other relief as may be appropriate in the circumstances." Given this general prayer, we believe that the court below could shape its order to fit the pleadings and proof and that its requirement that the city obey the Charter's command was proper.

As early as 1868 this Court recognized that under a general prayer for relief an equity court may grant such relief as is "agreeable" to the case pleaded and proven even though the relief granted differs from the specific relief prayed for. *Slemmer's Appeal,* 58 Pa. 155, 167 (1868). This doctrine has been repeatedly reaffirmed. See, e.g., *Christian v. Johnstown Police Pension Fund Association,* 421 Pa. 240, 245-46, 218 A. 2d 746, 749-50 (1966); *Meth v. Meth,* 360 Pa. 623, 62 A. 2d 848 (1949). Furthermore, we have stressed in many cases the similarity between equity proceedings and the function performed by a common pleas court when it entertains a mandamus action.[20] For example,

---

[20] Our cases are profusely sprinkled with statements that an application for a writ of mandamus is addressed to the sound discretion of the court, statements which bespeak equitable doctrine. See, e.g., *Waters v. Samuel,* 367 Pa. 618, 80 A. 2d 848 (1951).

*Hotel Casey Company v. Ross,* 343 Pa. 573, 582, 23 A. 2d 737, 742 (1942) contains the following: "Although . . . [mandamus] is granted by the law side of the court, equitable principles largely govern its issuance . . . ." See also *Taggart v. Board of Directors of Canon-McMillan Joint School System,* 409 Pa. 33, 40, 185 A. 2d 332, 336 (1962). A more recent expression of this view is contained in *Francis v. Corleto,* 418 Pa. 417, 429, 211 A. 2d 503, 509 (1965) : "Although granted by the law side of the court, mandamus is essentially equitable in nature, requiring the application of equitable principles."

Combining these two principles—the power of an equity court to grant relief differing from that specifically requested when the complaint also contains a general prayer and the similarity between the principles operative in equity and those applying in mandamus—we fail to see why a mandamus court should not also possess the power to grant relief which differs from that specifically requested. To hold otherwise, as the court below noted, would be to insist that a mandamus court may not grant the relief that the pleadings, proof and the law require.[21] Since equitable principles control the issuance of the writ of mandamus, we believe that equitable principles equally allow the trial court to enter an order which differs from the specific relief requested.

---

[21] Appellants insist that an equity action is not a mandamus action and therefore the equity cases considering the general prayer for relief issue are not relevant. While we agree that an equity action is not identical to a mandamus action, this lack of identity does not mean that on certain aspects the same principles should not apply. Furthermore, as discussed in text, infra, the appellants rely in support of another argument on cases which stress the equitable nature of a mandamus action; the city simply cannot have it both ways.

## B. The Scope of the Writ

The city's final argument which, at least in part, has merit is that the order entered steps beyond the traditional office of the writ of mandamus. In this aspect of the litigation, the city first relies upon cases as *Travis v. Teter*, 370 Pa. 326, 87 A. 2d 177 (1952) and *Waters v. Samuel*, 367 Pa. 618, 80 A. 2d 848 (1951). Both cases, emphasizing that a mandamus action is addressed to the equitable discretion of the court, stated that the court may in its discretion *refuse* to issue the writ where its issuance would injuriously affect the interests of the public or create disorder and confusion in municipal government. These cases do not say, as the city suggests, that the trial court abuses its discretion if it *does* issue the writ (there is nothing in this record which indicates that issuance of this writ would result in the evils outlined above).[22] Furthermore, the court below did attempt to balance the interests of the city and those of the members of its retirement system by permitting the city to meet its Charter obligations on a gradual basis: "It appears, therefore, that the most constructive, and hence the most equitable, way for this Court to proceed at this moment is to declare what defendants' obligations are, and to order that the obligations shall be met. If, upon consideration, defendants find that the City will be financially embarrassed, and that to avoid the embar-

---

[22] A plea by the city that it was not prepared to meet Charter demands of actuarial soundness has little to recommend it. In November, 1952, in April, 1958, in January, 1961, in June, 1963 and again in March, 1966 the city's actuaries (in reports included in this record) warned the city that it should *at least* be paying the interest on its unfunded accrued liability so that this liability will not (as it presently is) continue to grow. Some of these reports contain an additional suggestion that the accrued liability itself be decreased by amortization over a period of years.

rassment, present taxpayers will have to be taxed too severely, then defendants may devise, with the help of their actuary, a reasonable program for achieving gradually, and hence without undue burden on present taxpayers, what must be achieved. Defendants may then apply to the Court for permission to comply with the Court's order in accordance with such a graduated program."[23] Under the circumstances, the balance drawn by Judge SPAETH seems proper.

The second branch of the city's argument centers about language contained in *Dorris v. Lloyd (No. 1)*, 375 Pa. 474, 100 A. 2d 924 (1953), cert. denied, 347 U.S. 936, 74 S. Ct. 632 (1954). See also 11 Std. Pa. Practice, ch. 46, §1, at 227 (1964); *Lakeland Joint School District Authority v. Scott Township School District*, 414 Pa. 451, 458, 200 A. 2d 748, 752 (1964). We said in *Dorris* (supra at 478-79, 100 A. 2d at 927): "[A] fatal objection to the granting of the relief here sought is the fact that . . .: 'The ordinary office of the writ of mandamus is to coerce the performance of single acts of specific and imperative duty, . . .; and ordinarily it is not an appropriate remedy to compel a general course of conduct or a long series of continuous acts, to be performed under varying conditions, . . .' To this there is added . . .: 'It is plain that where the court is asked to require the defendant to adopt a course of official action, although it is a course required by statute and imposed upon the official by law, it would be necessary for the court to supervise, generally, his official conduct, and to determine in numerous instances whether he has, to the extent of his power, carried out the mandate of the court. It

---

[23] This balance is substantially similar to the technique we have employed and have suggested that lower courts might employ. See *Sinking Fund Commissioners of Philadelphia v. Philadelphia*, 324 Pa. 129, 134-36, 188 Atl. 314, 317-18 (1936).

would in effect render the court a supervising and managerial body as to the operation and conduct of the activity to which the writ pertains, and so keep the case open for an indefinite time to superintend the continuous performance of the duties by the respondent. Accordingly, the writ will not issue to compel the performance of a series of acts by a judicial officer; . . . nor to compel performance of other acts of a continuous nature.' "[24] Appellants contend that the tripartite order of the court below violates the teaching of *Dorris* for it places the court in a position where it must supervise a series of future acts by municipal officers. The first two parts of the order required the city to appropriate for 1967 and 1968 sufficient funds to cover its normal cost and interest on its unfunded accrued liability; the third directed the city to appropriate for each year after 1968 and until all of appellee's retirement benefits have been paid an amount sufficient to cover normal cost plus interest on the unfunded accrued liability. The first two parts of this order are not violative of *Dorris;* the third is.

There is no dispute that the first part of the order, covering 1967, is within the scope of the court's power; nor can there be, the city to the contrary notwithstanding, a dispute as to the 1968 section of the order. Section 2-300 of the Home Rule Charter requires that

---

[24] Our cases have not always been consistent with the views expressed in *Dorris*. For example, in *Loraine v. Pittsburg, Johnstown, Ebensburg & Eastern Railroad Company*, 205 Pa. 132, 54 Atl. 580 (1903), we affirmed an order in essence requiring a common carrier in futuro to carry plaintiff's goods. Holding that the order below was not too broad, we insisted (id. at 137-38, 54 Atl. at 582) : "We can see no obstacle in the way to framing a writ compelling defendant's continuance in the performance of that duty [to carry plaintiff's goods] and the court below has ample power to enforce its commands against defendant and its officers and should see to it that its orders are obeyed."

at least 30 days before the end of the city's fiscal year (in this case, December 31, 1967) city council must adopt the annual operating budget ordinance for the coming fiscal year. This budget must provide for discharge of any deficit. Thus, if the city's budget ordinance for fiscal 1968 did not contain sufficient appropriations (as the court below found) to cover normal cost and interest on unfunded accrued liability, it has already breached its duty and as to 1968 the order of the court below does not compel the performance of a future act.

However, for years subsequent to 1968 the city has not yet made its financial decisions; the third section of the order below thus contains a directive for the performance of a future act in violation of the dictates of *Dorris*. Although we can agree with the court below that, if the city fails to make sufficient appropriations for years subsequent to 1968 and the court's order for subsequent years is vacated, then subsequent and perhaps annual mandamus actions will be necessary to compel performance of the city's duty, we certainly cannot assume that the city, now aware of its obligations, will refuse to act accordingly.[25] Thus, the third section of the order of the court below must be vacated.

The order of the Court of Common Pleas of Philadelphia County, as modified, is affirmed.

Mr. Justice EAGEN concurs in the result.

Mr. Chief Justice BELL and Mr. Justice JONES took no part in the consideration or decision of this case.

---

[25] We further assume that the court below will still entertain a plan submitted by the city to enable the city, if it so wishes, to comply with the first two sections of the court's order on a gradual basis.

DISSENTING OPINION BY MR. JUSTICE COHEN:

When lawyers before this Court inaccurately state holdings of cited cases they perform a disservice to the litigants and the Court, but when a judge misinterprets appellate court decisions he performs a disservice not only to the litigants and the Court, but in addition, to the Bar and more importantly to the law. The majority opinion writer relies upon the case of *Retirement Board of Allegheny County v. McGovern*, 316 Pa. 161, 174 Atl. 400 (1934), to support the proposition that "we have consistently entertained mandamus actions brought by a *member of a retirement system* to enforce statutory commands which would benefit all members of the system." (Emphasis supplied). One need only read the first paragraph in *McGovern* to discover the obvious fact that the plaintiff in that case was the Retirement Board of Allegheny County and *not an individual member of the retirement system* as the majority would have one believe.

In an attempt to answer the contention that *McGovern* involved an action instituted by the Retirement Board of Allegheny County and *not by an individual member of the retirement system,* the majority opinion again commits serious errors in analyzing *McGovern* as it relates to the instant situation. Initially, it must be pointed out that the action in *McGovern* was instituted by the Retirement Board as an entity and not by individual members thereof against the county commissioners, not individually or as members of the Retirement Board, but rather in their capacity as county commissioners who had the responsibility under the Act in question to appropriate certain moneys then *due and owing* to the Retirement Board.

Although the Board is a public body clothed with duties of a public nature, the majority still insists that it is a private plaintiff and as such *McGovern*

lends weight to Dombrowski's right to maintain this mandamus action. The majority reasons that under the Mandamus Act the attorney general or a district attorney of the appropriate county are the *only* public officials who may institute mandamus actions and hence the Retirement Board unless considered a "beneficially interested person" would also lack the requisite interest necessary to have standing. Therefore, the majority concludes that if the Board had standing in *McGovern* because it was a "beneficially interested person" without having a vested right to benefits, then certainly Dombrowski who has in the majority's view a vested right would also have standing as a "beneficially interested person."

A reading of the Mandamus Act of June 8, 1893, P. L. 345, 12 P.S. §1914, will reveal that the majority to substantiate its position is arguing from a fallacious assumption due to an incorrect interpretation of the statute, i.e., a Retirement Board can only bring an action in mandamus if it were a "beneficially interested person" under §1913 of the Act, since the only public officials who can commence such an action would be the attorney general or a district attorney of the appropriate county. Section 1914 provides: "When the writ is sought to procure the enforcement of a public duty, the proceedings shall be prosecuted in the name of the Commonwealth on the relation of the attorney general: Provided however, That said proceeding, in proper cases, shall be on the relation of the district attorney of the proper county: Provided further, *That when said proceeding is sought to enforce a duty affecting a particular public interest of the state, it shall be on the relation of the officer entrusted with the management of such interest. . . .*" (Emphasis supplied).

The statute seems clear that in a proceeding seeking to enforce a duty affecting a particular public interest of the state, it shall be commenced *on the relation of the officer entrusted with the management of such interest*. Here the Retirement Board of Philadelphia County is entrusted with the management of the retirement system and it would be foolhardy to suggest that it would be unqualified under the language of §1914 to file an action of mandamus. Thus, there are several cases which the majority is apparently unaware of, which construe the import of the proviso dealing with mandamus actions commenced by public officials other than the attorney general or the district attorney of the appropriate county. In *Commonwealth ex rel. Lafean v. Snyder*, 261 Pa. 57, 104 Atl. 494 (1918), we upheld an action of mandamus commenced by a commissioner of banking against the auditor general and state treasurer to compel them to approve and pay the requisition for salary due him. The defendants argued that the banking commissioner lacked standing under §1914 of the Mandamus Act to bring such a proceeding and that the only proper party plaintiff was the Commonwealth on relation of the attorney general. In rejecting this contention and permitting the banking commissioner to maintain the mandamus action under the proviso of §1914, we stated: ". . . There can be no doubt that the present proceeding is brought to enforce a public duty and also one affecting a public interest, namely, the banking department of the Commonwealth, and therefore is properly brought in the name of the Commonwealth on the relation of the commissioner of banking. While the relator has also a private interest in his salary, yet the payment of his compensation, as well as the payment of other expenses of his office, is a necessary incident to the administration of the affairs of the department, and being paid out of public

funds is a matter of public concern, consequently, the duty of the officials having charge of such payment is a public duty. . . ."

The case of *Commonwealth ex rel. Bell v. Powell*, 249 Pa. 144, 94 Atl. 746 (1915), sheds additional light on the proper interpretation of this section. *Powell* concerned an action of mandamus instituted by the attorney general seeking to compel the auditor general to draw his warrant upon the state treasurer, in favor of the National Limestone Company, as was specified in the requisition of the state highway commissioner. The first question raised in *Powell* was whether the attorney general was the proper person to act as relator in the proceedings or should the action have been commenced on the relation of the state highway commissioner. We held that the attorney general was a proper party plaintiff but *not* the *only* proper plaintiff to the exclusion of other public officials, namely, in *Powell*, the state highway commissioner. In other words, we recognized that an official entrusted with the management of a particular state interest would have standing to institute a mandamus action *in addition to and not to the exclusion of the attorney general or the district attorney of the appropriate county.* Cf. *Stegmaier v. Jones,* 203 Pa. 47, 52 Atl. 56 (1902). Consequently, the standing of the Retirement Board of Allegheny County in *McGovern* was predicated upon §1914 (as a public officer) and not because the Board was a "beneficially interested person" under §1913. It should also seem obvious that the Board in *McGovern* was not a "beneficially interested person" in the sense that all the cases heretofore suggest, i.e., it had no pecuniary or financial personal interest other than enforcing its statutory duties and responsibilities to the public. The Board was acting in its public capacity in an attempt to discharge its public functions

and by no stretch of the imagination, reason, logic or case authority can it be categorized, as the majority does, as a private plaintiff.

The majority opinion (footnote 13) further indicates that it is not relying upon the numerous cases in which a mandamus action was instituted by a member of a retirement system to compel payment of benefits which were *allegedly due and owing to him.* Despite this disclaimer, I am at a loss to find a single decision cited in the majority opinion which involved a mandamus action commenced by a member of a retirement system who was not presently due benefits under the system. In *Davidson v. Beaver Falls Council,* 348 Pa. 207, 34 A. 2d 505 (1943), our Court took the position that Davidson was not yet eligible for benefits from the retirement system since there was no allegation that any funds were then due and owing to him. Therefore, the Court concluded that mandamus will not issue unless the party seeking relief is presently entitled to the funds he is seeking to create. Contrary to the majority opinion, *Davidson* is not an exception to the rule, but rather has been the rule without exception in this Commonwealth for years with respect to mandamus actions. If *Davidson* is an exception to a long line of cases suggesting otherwise, why does the majority opinion glaringly fail to cite one authority which has permitted a mandamus action when the individual member of the retirement system did not allege that certain moneys were presently due and **owing?**

Every case cited by the majority supports the principle that an individual member of a retirement system lacks the requisite interest to institute an action of mandamus unless he can point to some specific present injury which, if demonstrated, would entitle him at that time to relief in the form of certain benefits under the retirement system.

I will attempt to outline briefly, in chronological order, the factual situations in every retirement case cited by the majority for the purpose of demonstrating that in each case there was an allegation in the complaint that the plaintiff, member of the retirement system, was attempting to mandamus the defendant to compel payment of a pension which *he was presently entitled to receive.* In *Haldeman v. Hillegass,* 335 Pa. 375, 6 A. 2d 801 (1939), Haldeman commenced an action of mandamus to compel the Montgomery County Retirement Board to recognize him as a beneficiary-member of the retirement system. This action was instituted after a number of demands were made on the Board and only after the plaintiff had filed a written application to be retired under the Act in question. Simply stated, plaintiff was alleging that he was *presently entitled to a pension* which was being unlawfully withheld by the Retirement Board. *Baker v. Retirement Board of Allegheny County,* 374 Pa. 165, 97 A. 2d 231 (1953), involved the following factual picture: Baker in 1928, after having terminated 20 years of service as a member of the Police Department of the City of Pittsburgh, applied to the Police Pension Fund Association for certain pension payments. He was awarded the pension and began receiving the benefits as of January 1, 1929. On October 1, 1928, Baker became an employee of the County of Allegheny which employment continued until June 30, 1952, when he retired. He then applied for the county retirement allowance but his application was denied. Thereafter, an amicable action of mandamus was instituted against the Retirement Board to compel the payment of benefits under the retirement system which Baker alleged were *presently due and owing to him.* Suffice it to say, this is just another case cited by the majority which cannot be said to involve a situation parallel to the instant case.

Likewise, in *Hickey v. Pittsburgh Pension Board,* 378 Pa. 300, 106 A. 2d 233 (1954), an action of mandamus was instituted by an individual member of a retirement system to compel the Pension Board to pay him pension installments which, according to plaintiff's complaint, were discontinued when he obtained employment with the County of Allegheny. Again there was an allegation that the plaintiff seeking mandamus, if successful, *would be entitled to benefits* under the system. See *Harvey v. Allegheny County Retirement Board,* 392 Pa. 421, 141 A. 2d 197 (1958), and *Wright v. Allegheny County Retirement Board,* 390 Pa. 75, 134 A. 2d 231 (1957), both of which involved actions of mandamus by individual members of their respective retirement systems only after they retired and were *presently due pension benefits.*

The majority opinion relies upon *Taylor v. Abernathy,* 422 Pa. 629, 222 A. 2d 863 (1966), for the assertion: "If anything, plaintiff-Taylor's interest was weaker than that of Dombrowski for, at the time suit was brought, under the existing retirement system Taylor was no longer entitled to any retirement benefits." On the basis of this reasoning, the majority concludes that if Taylor had standing, then certainly Dombrowski would have standing. Contrary to the majority's assertion, Taylor's interest was unquestionably much stronger than Dombrowski's. Taylor had a present immediate interest inasmuch as he was being denied certain funds which he quite clearly alleged were *then due and owing.* Here, Dombrowski has yet to suffer any injury other than the theoretical possibility that the City of Philadelphia in the future (1972 or later) might not have sufficient funds to meet their obligation to him. In *Taylor* the possibility became the reality of the situation, since Taylor was definitely being denied funds which the majority concluded right-

fully belonged to him. As of the time this suit was instituted, the City has continued to meet its financial obligations in full under the retirement system and it is merely conjecture or surmise that some day it will not meet these obligations. The time for Dombrowski to complain is not now, but at such time when he is entitled and eligible to receive his pension and the City for some reason or another has failed to make payments in accordance with what the law requires. In *Geary v. Allegheny County Retirement Board,* 426 Pa. 254, 231 A. 2d 743 (1967), Geary instituted an action of mandamus to compel the Board to grant his application for a retirement allowance, which he alleged he was presently eligible to receive. The Board defended on the basis that the statute which reduced the required age from sixty to fifty-five was unconstitutional, since it changed the terms of the retirement contracts (discriminatory) and in addition reduced the certainty of payment to the members of the system. In other words, the Board in *Geary* alleged as a defense basically that which Dombrowski alleges in his complaint, namely, the system is presently actuarily unsound and that the City will not in the future be able to meet its commitments. Our Court, in issuing the writ of mandamus and refusing to consider the actuarial soundness of the system, reasoned that there must be some sort of concrete detriment to the employees rather than a conjectural, theoretical possibility that payments to them will not be met sometime in the future. While the Court did not use the language "standing to sue," the result reached impliedly leads to the conclusion that an employee would lack the requisite interest for challenging the actuarial soundness until a more concrete detriment existed, i.e., the actual failure of the City to meet its current obligations to him. If the defense of actuarial unsound-

ness could not be raised by the Retirement Board in *Geary*, it seems only reasonable to conclude that the question of actuarial unsoundness likewise cannot serve to form the basis of a complaint in mandamus by Dombrowski. It is just as speculative, conjectural, and theoretical that payments will not be forthcoming in the future whether this is a matter of defense or the subject of a complaint. For these reasons, I would hold that Dombrowski lacks the requisite interest in order to have standing to maintain this action of mandamus. However, I do not mean to suggest that other parties would also lack the standing to contest the actuarial soundness of the City's retirement system, since traditionally certain public officials, as well as the Retirement Board itself, have a sufficient interest in compelling the City to perform its duties to the public.

I dissent.